## E. R. WAGNER MFG. CO. et al. v. PORTER STEEL SPECIALTIES.

### No. 7307.

Circuit Court of Appeals, Seventh Circuit.

Nov. 29, 1940.

John W. Michael, of Milwaukee, Wis., for appellants.

Arthur M. Hood and Wm. P. Hahn, both of Indianapolis, Ind., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellants charged appellee with the infringement of United States patent to Smith, No. 1,898,318, issued February 21, 1933, on an application filed July 13, 1931. Appellant Callan owns the patent, and the appellant company is the exclusive licensee. The defenses were invalidity and non-infringement. The District Court held the claims invalid and dismissed the bill for want of equity. From that decree this appeal is prosecuted. Appellee now admits infringement if validity is established.

The Smith patent relates to combs for cleaning the rotary brushes of carpet sweepers. Its purpose is to provide a comb attachment which is mounted in relation to a brush so as to be automatically operable to clean the brush when the latter is rotated in one direction, and to cause the brush to clean the comb when the brush is rotated in the other direction. Another purpose is to provide a carpet sweeper, wherein two combs alternately function to clean the brush, and then to be cleaned by the brush, all according as the brush is operated in one direction or the other, the combs being pivoted at points above the brush axis and inclined upwardly so that when cleaning the brush they serve as gates between the dust pans and brush to conduct the dust and other matter from the floor into the pans. A further purpose is the provision of a comb mounting in which the comb tends to gravitate toward the brush so that when the brush is rotated in one direction the comb reposes on the outer ends of the bristles to be cleaned by the latter, and when the brush is rotating in the other direction, the frictional engagement of the bristles with the comb teeth, coupled with the tendency of the comb to move toward the brush, causes the comb to be automatically moved to a position in which its teeth are extended between the bristles, thereby effecting the cleaning of the latter. The alleged invention is applied to a conventional form of carpet sweeper, mounted for rolling movement on wheels and provided with a brush which is rotatable about a fixed axis through the wheels and in either direction according as the body is moved in one direction or the other. Dust pans are secured in the sweeper body at opposite sides of the brush.

The comb attachment comprises a pair of combs disposed at opposite sides of the brush, and, although they are reversely arranged, their specific construction and manner of mounting is identical. Each comb comprises an elongated body preferably made of metal, and of concave-convex form in cross section to lend strength thereto. From one edge of the body, teeth extend which are likewise formed from one piece of metal. The opposite ends of the comb body are flattened and bent at right angles to form ears, which are provided with openings in which pivoting pins are received to support the comb for pivotal movement within the sweeper body.

The pivot pins project inwardly from the end walls of the sweeper body so as to support the comb for pivotal movement about an axis which is above the axis of rotation of the brush so that the comb may function. The pivotal axis of the comb is offset to one side of its longitudinal center of the comb so that when mounted on the pivot pins it constantly tends to gravitate toward the brush so as to have cleaning engagement with the bristles of the brush.

To limit the pivotal movement of the comb in either direction about the pins, a pair of stop pins is provided which are secured in, and project inwardly from the end walls of the sweeper body, at points above and slightly to the brush side of the pivot pins. These stop pins are relatively long, and their positioning is such that they are engaged by the ears above referred to, to limit the swinging movement of the comb inwardly toward the brush, and by the end teeth in order to limit the swinging movement of the comb outwardly away from the brush. Both the pivot pins and stop pins are formed of fiber or other nonmetallic material in order to eliminate noise.

When the brush rotates in a counterclockwise direction, the right-hand comb occupies a stripping or cleaning position with respect to the brush, in which position the comb teeth pass between the brush bristles to remove therefrom all hairs, threads, dust, and the like, and to cause them to be deposited in the adjacent dust pan beneath. In that position the comb acts as a chute to span the space between the pan and the brush.

The cleaning position of the comb is defined by the ears which abut the stop pins above referred to, and in such position the comb teeth are at an angle of substantially forty-five degrees to and above a horizontal line intersecting the axis of the brush. The comb is initially moved to this position by the combined action of gravity and the frictional engagement of the brush bristles with the comb teeth. The bristles in moving downward between the teeth pull the comb inwardly. This action is positive and occurs immediately when the brush is rotated in a clockwise direction.

The other comb occupies a position tangent with respect to the periphery of the brush, so that the comb teeth repose on the outer ends of the brush bristles. The comb is moved to this position by and concurrently with the movement of the brush in a clockwise direction, due to its tendency to gravitate toward the brush. Thus any combings are removed by the bristles passing inwardly of the comb teeth to effectively clean the comb.

When the rotation of the brush is reversed, the combs instantly reverse their positions so that the first comb now operates to clean the brush while the brush operates to clean the second comb, the operation being entirely automatic, and is accomplished without the use of springs.

It is only when the sweeper is lifted from the floor and tilted or inverted, that the stop pans function to limit the outward swinging of the combs, so that when the sweeper is restored to a horizontal position the combs gravitate to a tangent position with respect to the periphery of the brush.

Claims 1, 2 and 4[1] are involved. The alleged invention resides in the provision of pivoted stop-controlled combs, constitut-

---

[1] "1. A sweeper comprising; a body; a brush rotatable in the body; a pan at one side of the brush; a comb movably mounted in the body at one side of the brush and above the pan and having its teeth projecting upward and towards the brush, and mounted so as to fall toward the brush with its teeth projecting into the brush, and means to limit movement of the teeth into the brush.

"2. A carpet sweeper comprising; a body; a brush mounted in the body to rotate in either direction about a fixed axis; a pan beneath and at one side of the brush; a stripping comb in the body above the pan and at one side of the brush; coacting means on the comb and body for supporting the comb so that its teeth extend upward and toward the brush and so that the comb is mounted

ing hinged chutes, bridging the space between brush and pans, and operated, by and according to the direction of rotation of the brush, to remove dirt and ravelings from the brush and convey them into the pans, and to clean the comb by the brush.

Appellee contends that there is no novelty in the invention. It urges that every element in appellants' disclosure is found in the prior art, and if there is presented by the patent any new or varied combination of those elements, such combination amounts to nothing more than mechanical skill. The prior art patents upon which appellee relies are: Peck, No. 469,714; Davis, No. 655,896; McAnerney, No. 1,-565,174; Smith, No. 1,813,325; Smith, No. 1,823,413; Entwisle (British), No. 194,046; and Dietschy (Swiss), No. 6,583. All of these, save the Swiss patent, were considered by the Examiner prior to the issuance of the patent now before us.

The District Court found that the present patent is a carpet sweeper of the well-known pan type, in which the combed brush of McAnerney has been substituted for the uncombed brush of the other prior art, and that such substitution amounted to nothing more than mechanical skill.

The court further found that carpet sweepers of the pan type, wherein pans flanked the brush, having a pivoted comb interposed between the brush and each pan were disclosed by Peck, Smith and the British patent; that carpet sweepers of the pan type having a non-pivoted comb interposed between the brush and the flanking pan, located to remove dirt from the upper part of the brush and direct it to the pan, were disclosed by the Swiss patent.

The court further found that carpet sweepers embodying a brush rotatable in either direction, having a pivoted brush-engaging comb inclined upwardly toward the brush and limited in its pivotal movements toward and from the brush, were disclosed by McAnerney, and that such disclosure was the full equivalent of the brush comb assembled in the patent in suit. It was further found by the court that it was within the normal skill of the art to substitute a privotable comb, which was old in the art, for the nonpivoted comb found in the Swiss patent.

Without describing in detail these prior art patents, it is sufficient to say that the British patent and the prior Smith patents disclose pivoted combs for sweeper brushes, but the combs do not constitute bridges for conveying the dirt into the pans. Neither do the combs extend upwardly and inwardly, but they extend downwardly and inwardly. It also may be noted that neither the Davis nor Swiss patents has pivoted combs; and the combs in the Peck patent do not of themselves constitute chutes for conveying material into the pan. That service is supplied by the cross-bars which support the movable inclines, the upper edges of which are provided with teeth which serve as the combs. Appellant urges that these inclines, or combs, do not point upwardly and inwardly of the brush, but we think they do. The inner face of each comb, or incline, as well as the inner face of the crossbar to which it is attached, is an arc, the lower end and center

for pivotal movement about the axis which is offset with respect to the center of gravity thereof for swinging the comb teeth toward the brush; and means for limiting movement of the comb toward the brush so that when the brush is rotated in one direction the comb assumes a position with its teeth extended upward between the bristles of the brush to remove brush accumulations and guide the latter downward across the comb into the pan."

"4. A carpet sweeper comprising; a body; a brush mounted in the body to rotate in either direction about a fixed axis; a pan beneath and at one side of the brush; a stripping comb in the body above the pan and at one side of the brush; coacting means on the comb and body for supporting the comb so that its teeth extend upward and toward the brush and so that the comb is mounted for pivotal movement about an axis which is offset with respect to the center of gravity thereof for swinging the comb teeth toward the brush; and means for limiting movement of the comb toward the brush so that when the brush is rotated in one direction the comb assumes a position with its teeth extended upward between the bristles of the brush to remove brush accumulations and guide the latter downward across the comb into the pan; said last mentioned means being so correlated to the combs as to limit movement of the combs away from the brush whereby, when the sweeper is moved away from a horizontal position and then returned, the combs will be restored to their normal operative positions."

of which are considerably further from the periphery of the brush than is the upper end of the arc. True, a vertical extension of the upper end of the arc would barely touch the brush, but an extension of the arc, which of course would not be vertical, would contact the brush. This is precisely what happens when in use, for then the inclines, or combs, follow the arc upwardly into the brush. Unquestionably the arc points upwardly and inwardly toward the brush, whether in use or at rest.

McAnerney discloses a vacuum cleaning apparatus of the nozzle type, which relies upon suction to carry away the dirt stripped from the brush by the combs. Flanking each side of the brush is a pivoted comb, the swinging movements of which are limited by the upright casing of the machine in one direction and an abutment in the brush-engaging direction. This abutment, as shown by the drawings, constitutes the floor, or base, upon which the comb or the rod with teeth, rests. If a line be drawn connecting the centers of the comb rods, that line will lie in a horizontal plane which intersects the core of the brush near or slightly below its center. The ends of the teeth of each comb are bent slightly upward, and the top edges of the teeth are concave, curving forwardly and downwardly from their supporting rods to about the longitudinal center of the comb, and then slightly upwardly. They are troughlike in cross section with the outermost edges of the trough lying in a horizontal plane. The bristles of the brush overlap the teeth of the combs, and when the brush is operating in a counterclockwise direction, the bristles will have a tendency automatically to drive the teeth of the left brush downwardly against the shoulder upon which the base of the comb rests. In that event the other comb in like manner is kicked up to a vertical position against the wall of the nozzle. This is due largely to the configuration of the under edges of the teeth of the combs which are convex, so that the bristles of the brush in moving upwardly against these curved edges strike the point of lowest convexity and lift the comb upward against the wall of the nozzle. The removal of litter from the bristles of the brush is facilitated by the fact that the upper edges or sides of the comb teeth are sharpened so that they tend to cut the threads, lint, and other litter, thereby reducing it to smaller pieces, making it more susceptible to the suction.

Dust pans are not used in this patent, for they are not necessary in a suction machine.

Appellants rely upon this fact as a distinguishing feature between McAnerney and the patent in suit. They further contend that McAnerney does not limit the movement of the teeth of the combs into the brush. In this respect they contend that while the shoulder referred to supports the combs in a horizontal plane when in active position, yet it does not limit the penetration of the comb teeth in the brush because in that position they already have penetrated the brush to their maximum extent, and any further downward pivotable movement would result in the combs coming out of the brush. They further argue that inasmuch as the combs are in a horizontal position when in use they can never act as a bridge to carry the dirt downwardly into a pan, or into any other kind of receptacle.

The line of demarcation which distinguishes patentability from skill of the art is indeed uncertain. At this time it would seem that every element disclosed in the patent in suit was at least suggested by McAnerney's disclosures, yet it is not clear that he had in mind the problem which confronted Smith. It is quite clear that he was not in any way bothered with getting the dirt into the dust pan because it was not necessary to use one. Of course, such pans had been in use since the beginning of this industry, and it seems simple enough now to substitute the pans in lieu of the suction device of McAnerney. However, McAnerney's device was patented in 1925, and more than seven years elapsed before the mechanics of this particular industry sensed the value of Smith's particular combination. It will be noted that appellee owned the McAnerney patent, and yet it never produced the alleged infringing device until after Smith came upon the market. True, appellee did not purchase the McAnerney patent until 1938, but appellee will be presumed to have known of its disclosures since its issue in 1925, and if it so clearly reveals Smith, or even suggests his disclosure, it would seem that ordinary skill would have been more alert. This fact weighs heavily on the side of invention. To hold otherwise, it seems to us, would reflect greatly upon appellee's mechanical skill. From the cited art we can not say that the Commissioner was in error in his conclusion of validity, and unless the disclosures of the Swiss patent

are sufficient to overcome that presumption of validity our duty is clear.

The Swiss patent was issued in 1893. It compromises a main shoulder, or casing, in which are mounted two circular brushes that may be laterally adjusted so that neither touches the other, or so that their bristles may intermingle or mesh. The combs are stationary, and one is placed on the outer upper part of the periphery of each brush. Each points upwardly and inwardly to its respective brush. As in other sweepers of this character, when the sweeper is pushed forward, the brushes rotate in a clockwise direction. In such case, from a lateral drawing, the forward movement of the sweeper would be to the left and the brushes would travel in a clockwise direction. In such case the left brush, being in front, picks up practically all the dirt from the floor and it is carried around this brush, under the left-hand comb, until it comes to the meshing point of the adjacent brushes.

It is obvious that the first comb under which it passes is calculated to remove but very little, if any, of the ravelings, and the like. It has a tendency rather to push such dirt down into the brush. The theory is that such dirt will be carried into the meshed bristles of both brushes, and that the right-hand brush, by the meshing process, will gather on its periphery the ravelings, and similar material, and carry it to the teeth of the comb which engages the right upper section of the right wheel. This last comb, of course, is so positioned that it will remove any material from the periphery of the right-hand wheel, if there be any there, and whatever is removed is carried over the comb, as a bridge, into the pan. Just how or why the right-hand brush would clean the left-hand brush, rather than be cleaned by it, during such movement, is not stated, and it is not apparent. The specifications of this patent indicate that the meshing of the brushes is optional. Whether this option is suggested for waxing rather than sweeping we are not informed, and that patentee offered no drawing of that feature. However, appellee submits a drawing to illustrate the use of the machine as a sweeper when the bristles are not meshed, but it is obvious that ravelings, and the like, would never reach the pan except those which might be carried by the right-hand brush. This brush would pick up nothing except that which the front brush had failed to

get. What would become of such dirt in the front brush is not suggested. It would probably accumulate in the front brush, being pushed in toward the core of the brush by passing under the comb.

We see nothing in this patent to suggest the combined disclosures of Smith, except the comb which acts as a bridge to carry whatever dirt may accumulate on that periphery, if any.

Whatever we have said in regard to the disclosures of McAnerney may be repeated with respect to the Swiss patent. Its disclosures are more than forty years old, and they seem not to have impressed those skilled in the art.

Smith's commercial success cannot be ignored in this case. It is quite true that advertising, and the ability to advertise, should not be overlooked. This is especially true in cases where the patented device accomplishes but little or no more than other similar structures. However, where the patented article obviously has merit and does its work in a perfect manner, as it is designed to do, it will not do to say that the entire commercial success is due to advertisement. The prior art before us discloses nothing which begins to compare with the accomplishment of this patent. The same, of course, can be said of the accused device, for appellee has copied the patent and admits it. Conceding for the purpose of the argument, that the elements are all old and that each element used produces no new result, yet we are convinced that a beneficial result has been produced in a more efficient, economical and facile manner, and we feel constrained to hold the claims valid. New York Scaffolding Co. v. Whitney, 8 Cir., 224 F. 452.

The decree is reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.

TREANOR, Circuit Judge (dissenting).

I agree with the statement in the opinion of the court "that a beneficial result has been produced in a more efficient, economical and facile manner" than was produced by any of the prior devices. I am convinced, however, that such result has been produced by changes and improvements which represent nothing more than mechanical skill. The same may be said of the commercial success of the patented device.

An exercise of mechanical skill cannot constitute invention even though it does contribute to the commercial success of a device and also produces a beneficial result in a more efficient, economic and facile manner.

I am of the opinion that the District Court correctly held the claims invalid and properly dismissed the bill for want of equity.