## DELTA MFG. CO. v. E. L. ESSLEY MACHINERY CO.

Civ. A. No. 1238.

District Court, E. D. Wisconsin.

Nov. 6, 1944.

Richard F. Mooney (of Miller, Mack & Fairchild), of Milwaukee, Wis. (William A. Strauch and J. Matthews Neale, both of Washington, D. C., of counsel), for plaintiff.

John W. Michael (of Lecher, Michael, Spohn & Best), of Milwaukee, Wis. (Gerritt D. Foster, of Milwaukee, Wis., of counsel), for defendant.

DUFFY, District Judge.

The complaint herein charges infringement of Tautz Patent No. 2,069,395 issued February 2, 1937, on application filed October 21, 1935. The alleged invention relates to improvements in safety shields. Claims 6, 7, and 8 are in issue.* Defenses are invalidity for lack of invention, anticipation and aggregation, and non-infringement of claims 6 and 8. Hammond Machinery Builders, Inc. of Kalamazoo, Michigan, manufacture the accused shields and have assumed full control of the defense of this action.

From the time that power grinder machines came into use workmen operating such machines had received many injuries to the eyes, face, and hands. Small particles of the abrasive wheels and from the metal pieces being ground were by the nature of the operation thrown into the air with some force, and these particles often lodged in the eyes of the operators or injured exposed portions of the face. Furthermore, the grinding wheels were often practically noiseless in operation and inadequate lighting made it difficult to observe whether the wheel was in motion, with the result that the operators and others suffered painful injuries by inadvertently coming in contact with the rotating wheel. Also, accurate grinding of many tools and pieces required more adequate light than existed at the point of contact between the work piece and the grinding wheel. These difficulties persisted even though the grinders were placed where the available illumination from general sources, such as windows and lighting fixtures, was considered best.

Labor unions, safety committees, and management interested themselves in the problem. Goggles were provided; they were hung on the grinding machine and were supposed to be worn during any grinding operation. While they did protect the eyes of the operator, they impaired his vision, were often uncomfortable and unsanitary, and did not protect the other portions of the face which were exposed. Thereafter the practice was adopted in many areas that each worker have his own goggles. However for many short grinding operations the worker either forgot or neglected to use his goggles and serious injuries continued to occur.

Perhaps as early as 1898 use was made of transparent, non-illuminated, hinged shields, designed to be supported on the grinder adjacent to and above the grinder wheel. These shields tended to somewhat distort and decrease the available light rays. Consequently operators often moved them out of the way, and used the grinder without this protection. About 1923 shields were introduced with a single electric light bulb built in. The evidence disclosed that although such shields were used to some extent, they were not entirely satisfactory because shadows were cast on the work and because glare from the light impaired the vision of the operator.

Herbert E. Tautz was an engineer for the plaintiff's predecessor. Early in 1935 he conceived the safety shield of the patent in suit. This shield consists of a metal frame having a depending peripheral skirt,

---

* "Claim 6. A safety shield comprising a housing having a top wall and a skirt, said top wall having an opening, a transparent panel for said opening for viewing work therethrough, and means carried by said housing for directing light onto the work from regions adjacent the opposite sides of said panel and within said skirt.

"Claim 7. A safety shield comprising a support having opposite side walls and partitions spaced from said side walls to form lamp compartments, a transparent panel carried by said support at the middle portion thereof for viewing work there-through, and lamps in said compartments for illuminating the work.

"Claim 8. A safety shield comprising a support, a transparent panel carried by said support for viewing work therethrough, said support having pockets adjacent opposite sides, lamp sockets carried by said support at opposite sides of said panel to receive lamps for illuminating the work, each socket having a flanged portion insertable into the respective pocket of the support, and means for holding said sockets in said pockets."

inwardly disposed depending partition members generally paralleling three sides of the depending skirt, a central opening closed by a transparent window or panel and lying within the confines of the depending partition members so as to provide peripheral recesses at the sides and back for respectively receiving light bulbs and electric wiring. A pair of light bulbs is located in pockets at the sides of the shield out of the line of particles thrown off from the wheel. This shield is permanently mounted close to the grinding wheel and cannot be thrown back. It effectively intercepts grinding dust and particles thrown off from the wheel, and concentrates shadowless illumination along the sides and at the front of the grinding wheel and work, without glare in the eyes of the operator.

In October, 1935, the patented shield was incorporated as a part of plaintiff's grinders and was offered to the trade over the protests and misgivings of its salesmen because of the resultant substantially higher prices compared with competitive grinders. However, the Delta "Twin-Lite" shield found ready acceptance by the trade, and sales of the Delta grinders rapidly increased. In the first year after their introduction 2,600 were sold, and annual sales increased until 15,000 were sold in 1943.

Defendant argues that because sales of plaintiff's grinders increased during the four or five years before our country entered the war and since then is no proof that such increase was due to the addition of the new shields, pointing out that during this period a large demand for machinery of all kinds had developed, and also that since the shields were attached to plaintiff's grinders, a purchaser got the shield whether he wanted it or not. This argument would have greater weight were it not for the fact that although plaintiff's shield was designed for use with the grinders which it manufactured, the demand by workers for the patented shield was such that 25% of those sold were purchased for use on grinders made by manufacturers other than plaintiff. Starting from scratch in a depression period, such ever-increasing sales, in spite of stiff competition at less than half the cost of the Delta grinders, establishes a criterion of invention. E. R. Wagner Manufacturing Co. v. Porter Steel Specialties, 7 Cir., 116 F.2d 63; James P. Marsh Corp. v. United States Gauge Co., 7 Cir., 129 F.2d 161; Wahl Clipper Corp. v. Andis Clipper Co., 7 Cir., 66 F.2d 162.

For about two years none of the plaintiff's competitors copied the Twin-Lite shields. However, in 1937 the Surty Company (which had produced a single light shield since 1923) took out a license under the patent; and the Boyer-Campbell Company took a license in 1942. It was in the latter year that Hammond Machinery Builders brought out the accused device which they called the "Wheel-Lite" shield.

Comparing plaintiff's Twin-Lite shield with the Hammond Wheel-Lite shield, it will be noted that each has a peripheral skirt, the skirt of the accused shield being bulged at the opposite sides to receive the globe-like lamp bulbs. Both have partitions extending from the front skirt portion to a crosswise partition disposed inwardly of the rear skirt portion and forming a central opening, and light compartments located and shaped to diffuse light and to direct it downwardly and inwardly toward the sides and across the front edge of a grinder wheel viewed through the opening; a wire compartment along the rear edge of the shield; and a transparent panel covering the opening and permitting the grinder wheel to be viewed therethrough from directly above the working surfaces of the wheel. The accused device has screw lamp sockets while the patented shield has bayonet sockets, each having a flange and socket formation. The Delta shield has reflector members around the lamp bulbs while the accused device does not.

At first blush I thought it would be obvious to a mechanic skilled in the art to take a Surty or any other type one-lamp shield and replace the one lamp on top with two lamps, one on each side, and that therefore these changes did not constitute invention. However, tens of thousands of mechanics had been using power grinders since 1923, and accidents to the eyes, face and hands of workers had continued. During a demonstration in the courtroom I was amazed to note the remarkable shadowless illumination at the sides and front of the grinding wheel when looking through plaintiff's shield. As Witness Doyle, safety inspector for the Wisconsin Industrial Commission, said in comparing the patented shield with previous unlighted and one-light shields, "Well, the Twin-Lite shield of Delta and other shields of the same type are far superior due to the fact that you have a clear vision of the revolving wheel, tool rest, and the tools to be ground." He also testified that the two-lighted wheel first solved the problem of both adequate protection to

workers and adequate illumination of the work on the grinders.

■ I am convinced that the patented shield was the first to incorporate lights in a manner to achieve shadowless illumination without reflection, as well as to add to the protective screening effect of a shield and its incident protection from wheel burns, the safety of clear vision and improved grinder efficiency through adequate illumination. It was the first shield that grinder operators willingly used because it improved their safety, vision, and comfort. Tautz took a long delayed step and this is a further criterion of invention. Hildreth v. Mastoras, 257 U.S. 27, 34, 42 S.Ct. 20, 66 L.Ed. 112; Peerless Equipment Co. v. W. H. Miner, Inc., 7 Cir., 93 F.2d 98; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

The solution of the problem of grinder protection required the use of a transparent panel to permit an operator to have a clear vision of his work while screening him from the dust and metal particles thrown off by the grinding wheel, plus properly arranged illumination to avoid reflections or shadows from the wheel or work, so that the hands of the worker could effectively be protected from the wheel permitting him to grind accurately, without the possibility of injuries, and in a comfortable, non-fatiguing position. The plain glass shields of the prior art were customarily pushed aside by worker and thus not used. The effort to supply goggles was not effective. The single bulb shield such as manufactured by Surty made very little impression on the art. The trained technical faculty at Boys Technical High School at Milwaukee attempted to improve upon the Surty wheel but again only a single light shield was the result.

■ Defendant's position on aggregation cannot be sustained. The real invention in producing a satisfactory grinder shield was the appreciation that wheel burns to the hands usually resulted either from fatigue-induced contact with the wheel or more likely from poor visibility induced by inadequate illumination, and the realization of the need for and the provision of the protection of a shield with correlated illuminating means in light diffusing compartments providing the unitary result of adequate shadowless illumination without reflection thereby permitting the worker to assume a safe, protected, comfortable position for accurate grinding work. Tautz solved the problem by not merely placing two lights where there had been but one before, but by designing a small shield structure which could be mounted close to the work where it did not interfere with accurate close grinding from a comfortable position, which protected the worker against eye and face injuries, and which provided adequate diffused illumination in an unusual manner without reflections and without shadows from parts of the machine or the work or the worker.

Under all the circumstances as shown by the evidence in this case, I am convinced that claims 6, 7, and 8 are not anticipated by the prior art patents and publications and prior uses relied upon by the defendant, and not devoid of invention by reason thereof, but that they are valid and enforceable claims.

Defendant does not deny infringement of claim 7. It does contend claim 6 is not infringed, arguing that the "means" referred to therein are the reflectors which the accused device does not have. I am of the opinion that the "means" referred to are the lamps, skirt, and partition forming the bulb compartments, which of course are present in the accused structure. I have also concluded that claim 8 is infringed.