AETNA BALL & ROLLER BEARING CO.
v. STANDARD UNIT PARTS
CORP.

No. 10584.

United States Court of Appeals
Seventh Circuit.

July 16, 1952.

Sidney Neuman, Chicago, Ill., Paul Kolisch, J. Pierre Kolisch, New York City, Thiess, Olson & Mecklenburger, Chicago, Ill., of counsel, for appellant.

Roy H. Olson, Curtis F. Prangley, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY, and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This appeal is from a judgment holding valid and infringed certain claims of three patents, relating to ball bearings, issued to Louis H. Stein, as follows: No. 1,958,725, filed August 14, 1933, issued May 15, 1934; No. 2,140,818, filed November 22, 1937, issued December 20, 1938, and No. 2,230,471, filed October 13, 1938, issued February 4, 1941. Plaintiff is the owner of the three patents by assignment from Stein. We shall refer to the patents, as has been done by the parties, as Stein I, II and III. The claims relied upon are 1, 2, 4 and 5 of Stein I; 1, 4, 7 and 8 of Stein II and 1, 2, 3 and 4 of Stein III. Stein I expired pendente lite on May 15, 1951. The judgment enjoins the defendant from the further use and sale of the bearings adjudged to infringe Stein II and III, and requires it to account to the plaintiff for damages because of its infringement of all three patents. (Presumably as to Stein I, the accounting required is only to the date of its expiration.)

The district court heard and considered much evidence, both oral and documentary, the former including a number of experts offered by the respective parties and the latter a large number of prior art patents and uses relied upon by the defendant to invalidate the patents. At the conclusion of the hearing, the court expressed the view that the patents were valid and infringed and requested counsel for the plaintiff to submit findings of fact and conclusions of law, which was done. A hearing was had upon such proposed findings and, over objection by the defendant to numerous of the findings as proposed, the court adopted them without change.

Stein I is entitled "Ball Bearing," and Stein II and III are each entitled "Antifriction Bearing." The patents all relate to clutch release thrust bearings, particularly for automobiles. Plaintiff had long been engaged in the manufacture of clutch release bearings and, prior to the advent of Stein, had manufactured a bearing illustrated by plaintiff's exhibit 10. The deficiencies of that and other conventional bearings of the period were the misalignment of the races and the annular row of balls, the escape of excessive grease from the bearing and the noise attendant upon the radial relative movement of the races and the row of balls as the clutch pedal was operated and released. Thus, these were some of the problems for which a solution was sought. Plaintiff was informed by Buick Motor Company, one of its customers, that if plaintiff did not design a bearing eliminating the deficiencies attendant upon the conventional bearing, Buick would itself design such a bearing. Thereupon, the problem was referred to Stein, at that time works manager and superintendent for plaintiff. He went to work on the problem and in 1933, after a few months' effort, developed the bearing which furnished the subject matter of Stein I. Stein in his specifications, after reciting the deficiencies in the conventional bearing then in use, states: "The chief object of my invention is the elimination of the foregoing objections, and in general I accomplished this by providing interengaging surfaces between the ball retainer and the race rings whereby the retainer, and consequently the balls, are always maintained in accurate concentric alignment with the grooves in the race rings, whether the bearing be under thrust load or relieved of thrust load and the races permitted to move apart slightly."

Stein I, as described in plaintiff's brief, discloses "a thrust bearing consisting of a fixed race ring 10 mounted on the carrier or shaft 11. A free race ring 14 is separated from the fixed race ring by an annular row of balls 18 positioned within opposed grooves 16 in the fixed race and 17 in the free race. A housing or shell 25 embraces, but does not contact, the fixed race 10 and is secured to and rotatable with the free race 14. A ball retainer 20 acts as a separator for the balls and also is a positioner in that it maintains concentricity of radial position so that the races, the grooves and the balls are preserved in actual alignment and restrained from any detrimental off-setting or eccentric position. A hub portion 21 of the retainer has a running fit on the shaft or carrier 11. One end or flange 22 of the hub extends into and has a running fit within a counterbore 23 in the fixed race and the other extremity 24 of the hub has a running fit with the bore of the free race 14. A portion of the T of the retainer extends radially outwardly into the space between the fixed and free races, and thereby cooperates to secure the races and retainer ring against axial separation. Thus, the races, retainer and shell present a self-contained bearing unit in which the races are maintained in concentric alignment, even though they are subjected to repeated slight separation under load and release load conditions. The close running fit of the ball retainer hub and the free race serves also to counteract lubricant leakage in that vicinity."

Claim 4 of Stein I, asserted to be typical, with the elements of the claim numbered to correspond with his drawings, reads as follows: "A thrust bearing comprising a shaft (11), a fixed race ring (10) having a driving fit on the shaft and having a counterbore (23) at the shaft opening, a free race ring (14) surrounding the shaft at a spaced distance from the fixed race ring, race grooves (16–17) on opposed faces of the race rings, an annular row of balls (18) and a retainer ring (20) having a hub portion (21) extending between the shaft and the free race ring with the free race ring mounted on the hub with a running fit, the hub also extending into said counterbore (23) and journaled on the fixed race ring (14) with a running fit."

Plaintiff manufactured two or three million bearings of the structure shown in Stein I during the years 1934 to 1936, inclusive, and, as the court found, "The bearing of the first Stein patent, as manufactured by the plaintiff, was a very good bearing and satisfactory for most normal applications, but in tougher applications an excessive grease loss was experienced * * *."

The court, relative to defendant's charge of invalidity directed at Stein I, found: "The defendant on trial relied upon the patents to Hess 1,116,887, to Graham 1,296,650, and to Marles 1,734,222, as each anticipating the Stein patent 1,958,725, and offered expert testimony in support of the defendant's claim that Stein patent 1,958,725 is invalid for want of invention over each of said patents to Hess, Graham, and Marles. Said patents to Hess, Graham, and Marles do not anticipate claims 1, 2, 4 and 5 of Stein patent 1,958,725, and the expert testimony taken with said three patents failed to sustain the burden upon the defendant of proving want of invention in claims 1, 2, 4 and 5 of Stein patent 1,958,725. No thrust bearing known prior to the year 1933, when Stein created the bearing disclosed in patent 1,958,725, embodied a retainer, or an equivalent two-piece structure, which held the balls of the bearing in spaced relation in confronting grooves of complemental fixed and free race rings, retained the race rings in concentric rotary relation by utilizing the flanges or hub portions of the retainer or its equivalent as journals maintaining the races and balls, in concentric rotary relation with each other and with the mounting shaft. The bearing as disclosed in Stein patent 1,958,725 and as described in claims 1, 2, 4 and 5 of said patent, required for its conception and production the exercise of inventive genius; the exercise of skill beyond the skill of the calling, and constitutes an invention."

A study of the prior art thus relied upon, as analyzed and explained by the expert witnesses, leads us to the view that the finding of patentable invention in

Stein I must be accepted. Certainly we cannot say that the finding is clearly erroneous even though a plausible argument is made to the contrary, predicated in the main, however, upon the testimony of defendant's experts. It must be kept in mind, of course, that it is not the function of a reviewing court to weigh the conflicting testimony but that we are concerned only with the question as to whether there is substantial support for the finding. We think there is.

Relative to infringement of Stein I, the court found: "The accused Federal bearings (Plaintiff's Exhibits 4, 5 and 6) sold by the defendant provide a two-piece retainer, one part of which forms a separator for the annular row of balls, and the other part of which forms a hub received in a counterbore in a fixed race, the hub having a flange received in the free race and also having a radially extending portion securing the retainer against axial separating movement relative to the fixed and free races. Said two-piece retainer of each of said accused bearings performs substantially the same function, in substantially the same way, to produce substantially the same result, as the one-piece retainer of the bearing of Stein patent 1,958,725, as described in claims 1, 2, 4 and 5 of said patent." The court also found that the bearings sold by the defendant are "the full equivalent" of the bearing disclosed in Stein I.

Defendant makes no serious issue of the court's finding of equivalency but argues that the rule is not applicable because of file wrapper estoppel. We think defendant's contention in this respect is without merit because there is no factual situation upon which it can be properly predicated. At any rate, we find nothing in the proceedings in the Patent Office which places any limitation upon the position presently asserted by plaintiff regarding infringement of Stein I. Thus, we accept the finding that the accused structures are an infringement of this patent.

The subject matter in each of Stein II and III is admittedly merely an improvement of Stein I. Reduced to the simple language of the layman, they each suggest a means for preventing leakage of grease

from the bearing, Stein II at one point and Stein III at another. The charges of invalidity leveled at these two patents contain so many elements in common that they, in part at least, may be considered together. In Stein II the patentee states: "My present invention has two chief objects. The first is to prevent leakage of grease so that the bearing can be initially packed with grease at the factory and maintain an ample supply of grease throughout the life of the bearing or the life of the vehicle in which it is used. The second is to prevent the drying up of the grease, either generally or locally where it will impede the proper and continued lubrication of the bearing." Later he states: "In my solution of the problem, I have sought to avoid the addition of more parts, but rather to retain only the parts customarily essential in such bearings and re-form or rearrange those parts to take advantage of the forces and factors potentially present within the bearing itself and utilize them to prevent the escape of grease from the bearing. Somewhat similarly I have taken advantage of these forces and factors to enlarge the grease supply space and to promote internal circulation, calculated to avoid general or localized hardening of the grease, all without the necessity of increasing the over-all dimension of a given bearing or weakening its essential structure." And again the patentee states: "The chief structural changes by which I preferably achieve my present invention are exceedingly simple and few. They do not enlarge the overall dimensions of the bearing unit, nor do they impair the strength of its component parts. They do not involve the addition of any more parts. One structural change is to cut back the rim face of the free [fixed] race ring and make the face an oblique one leading inwardly to the ball face at the region of the balls. The other change is to oblique the corner of the shell adjacent the vertical flange."

Plaintiff in its brief states that Stein accomplished "the foregoing objects by making the fixed race ring 10 considerably less in radius than that of the reservoir-defining portion of the shell 25. With this arrangement, an open and relatively large portion

of a lubricant containing and retaining reservoir extends with considerable radial depth radially outwardly of the fixed ring 10 and to the clearance space 29. The provision of the enlarged grease reservoir and the obliquely disposed corner portion 37 of the shell 25 serve to prevent leakage and promote internal circulation of grease within the bearing so as to avoid local or generalized hardening of the grease."

Stein III, as described in plaintiff's brief, "relates to an improvement in thrust bearings of the type disclosed in Stein I and Stein II, and is directed particularly to the problem of grease leakage between the inner periphery of the shell 25 and the outer periphery of the free race ring 14 which supports the shell. Stein points out that the bearing rotates at very high speeds and the grease is then subjected to a very considerable centrifugal pressure which readily finds a path of leakage for the grease if the shell is imperfectly sealed to the free race ring. Constructions prior to Stein III presented certain leakage problems along the outer periphery of the free race ring 14 at the point where it is secured to the shell 25. The maintenance of a seal to prevent leakage of grease from the reservoir along the periphery of the free race is important because in present day automobile practice the clutch release bearings are calculated to run indefinitely without further grease than that with which they are packed at the factory. As a result, the clutch release bearing is one which does not receive routine service station lubrication to preclude its running dry.

"While Stein II is directed particularly to the problem of leakage in the restricted space between the vertical flange 32 of the shell and the outer surface of the fixed race ring 10, Stein III is concerned primarily with the prevention of leakage of grease along the outer periphery of the free race ring. This was accomplished by providing a shoulder 36 in association with the bevel or chamfer 35 in the vicinity of the rim of the free race ring 14. This shoulder cooperates with the rim of the free race 14 to present a sharp sealing corner 37. The relatively soft shell 25 is spun over this relatively sharp corner 37 onto the profile of the hard tool-steel-like race ring 14 so as to provide a cut seal. This corner 37 cooperates with the opposite corner of the race ring 14 in providing a more perfect seal."

In this patent, the patentee in his specification states: "As an exemplary application of my invention I have here illustrated it as incorporated in a clutch release bearing of the type shown in my Patent No. 1,958,725 of May 15, 1934, but more especially as shown in my application Serial No. 175,779 filed November 22, 1937, now Patent No. 2,140,818, of December 20, 1938. The latter application is concerned with the solution of the problem of leakage in the clearance passage between the distant face of the fixed race ring and the embracing flange of the shell, whereas the present invention, as stated, is concerned with the effective elimination of leakage between the shell and the fixed race ring by which it is carried."

Not only did the patentee in Stein III illustrate his improvement in connection with Stein I and II, but he also claimed all that was included in the two former patents. And it is even more certain that the patentee in Stein II claimed not only his improvement but everything that was disclosed in Stein I. Thus, in II he re-patented I, and in III he re-patented both I and II.

Plaintiff's vice president, Rozner, when asked to explain the difference between Stein II and III, stated: "This bearing [referring to Stein III] shows features of the first Stein bearing, the second Stein bearing, and there is added to it the feature of the third Stein bearing."

Plaintiff's expert, Yeomans, testified as to Stein III: "The principal elements or components of this bearing are similar to those in the two preceding patents. There is a fixed race ring adapted to be pressed upon the bearing carrier. There is a free race ring which is adapted to rotate as driven by the clutch fingers of the rotating fly wheel. There is a ball retainer which acts to position relatively and concentrically the fixed and free race rings and annularly position the balls which are adapted to run in the opposed grooves of the race rings. The features of the large reservoir space which

were discussed in the last patent are present here." After thus conceding that all the elements found in the preceding patents were in Stein III, the witness designated as the patentable improvement the seal to prevent the escaping of grease between the free race ring and the shell.

Claim 3 of Stein II reads as follows: "A thrust bearing comprising a fixed race ring, a free race ring side-by-side therewith, round anti-friction elements rolling between the adjacent faces of the rings, and a shell carried by the free race ring and sealed thereto, the shell outwardly embracing the fixed ring and extending radially inwardly along the back thereof in clearance-space proximity thereto, *the rim face of the fixed ring being obliqued inwardly toward the elements, and the outer back corner of the shell being cut off obliquely opposite the rim face of the fixed ring.*" (Italics ours.) All the elements of this combination claim obvious'y are shown in Stein I. Any novelty must reside in the italicized phrase, which calls for the reduction in size of one of the elements to make provision, as heretofore shown, for a larger grease reservoir.

■■ In our view, Stein II is void because the improvement asserted to constitute the invention was not claimed as such but was claimed in combination with all the elements disclosed in Stein I.

In Rogers v. Alemite Corp. (reported with Bassick Mfg. Co. v. R. M. Hollingshead Co.), 298 U.S. 415, 425, 56 S.Ct. 787, 791, 80 L.Ed. 1251, the court stated: "The question then is whether, by this method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element. That this cannot be done is shown by numerous cases in this and other federal courts." The court further on the same page, in distinguishing Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 325, 29 S.Ct. 495, 53 L.Ed. 805, stated: "The invention did not, as here, consist of the mere improvement of one element of an old combination." This principle of the Bassick (or Rogers) case was referred to with approval in Great

Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 150, 71 S. Ct. 127, 95 L.Ed. 162.

In Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, the court stated: "As we said of Gullborg in the Rogers Case, having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The patent is therefore void as claiming more than the applicant invented. * * * And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

Also, in General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 368, 58 S.Ct. 899, 901, 82 L.Ed. 1402, the court stated: "Recognizing that most inventions represent improvements on some existing article, process or machine, and that a description of the invention must in large part set out what is old in order to facilitate the understanding of what is new, Congress requires of the applicant 'a distinct and specific statement of what he claims to be new, and to be his invention.' Patents, whether basic or for improvements, must comply accurately and precisely with the statutory requirements as to claims of invention or discovery."

The principles thus stated require a holding that Stein II is void. Admittedly, the patentee's asserted invention was nothing more than a reduction in size of one of the parts of an old combination and the improvement thus achieved was claimed in connection with and as a part of such combination. The bearing thus improved performed no new or different function and the most that can be said is that it attained an improved result.

Stein III falls in the same category. The improvement constituting the subject matter of the patent was not claimed as such but was claimed in connection with the old combination, that disclosed in both Stein I and II. In fact, the patentee in

his specification (heretofore quoted) frankly so admits.

Claim 1 of Stein III reads as follows: "An anti-friction thrust bearing comprising a free race ring, a fixed race ring opposed thereto, anti-friction elements rolling between the opposed faces of the rings, the rim face of the free race ring being annularly sharp-edged at its near corner and chamfered at its remote corner, leaving *a remote-facing shoulder between the chamfer and the remaining face of the ring, with an annular sharp edge where the shoulder and remaining rim face join*, and a grease retaining shell fixedly carried by the free race ring, the shell being of sheet metal *of hardness and elasticity in the order of that of a relatively soft, low carbon, cold rolled sheet steel* and comprising a cylindrical portion flanged inwardly at one end to embrace the remote face of the fixed race ring and adjacent its other end presenting a shoulder *receiving the said near sharp edge of the free race ring and extending therebeyond over the said remote sharp edge* of the free race ring and its shoulder and along the chamfer, the metal of the free race ring which forms its said edges *being hardened to the order of tool steel hardness whereby the edges cut into the shell to form a cut seal therewith.*" (Italics ours.) The italicized language appears to describe the subject matter of the invention. For the same reasons ascribed to Stein II, we hold that Stein III is void.

Furthermore, we think that both Stein II and III are invalid for another reason, that is, that the improvements relied upon do not constitute patentable invention. We think this is so as a matter of law. As was said in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 131, 95 L.Ed. 162: "The defect that we find in this judgment is that a standard of invention appears to have been used that is less exacting than that required where a combination is made up entirely of old components." The reasoning of the court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U. S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58, is persuasive. The court stated: "We may concede that the functions performed by

Mead's combination were new and useful. But that does not necessarily make the device patentable. * * * Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L. Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * * The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses." And the court quoted from Reckendorfer v. Faber, 92 U.S. 347, 356, 23 L.Ed. 719, as follows: "'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.'"

As heretofore shown and as found by the court, the bearing of Stein I was extensively manufactured by the plaintiff and was a good bearing. A defect was detected, caused by the leakage of grease between the fixed race and the shell. This defect was remedied in Stein II by an enlargement of the grease reservoir, which was accomplished by reducing the size of the fixed race. This was without change in the function of the fixed race and, as the pattentee states, without the addition of any parts and without the necessity of increasing the over-all dimension. The problem was presented to and solved by Stein just as, so we think, any trained mechanic would have been capable of doing. The employment of the described means for remedying the defect cannot, in our judgment, be accorded the status of a patentable invention.

The problem of Stein III also related to the leakage of grease, but at a point between the inner periphery of the shell and the outer periphery of the free race ring which supports the shell. This problem was solved by an alteration of the form of the shell and the free race ring at the friction point between the two members. The change is what the experts refer to as a "cut seal." Plaintiff's expert, Yeomans, was asked, "Referring to Stein Patent No. III how deeply do you have to cut into the shell with the free race, in order to get a cut seal?" He answered, "Any cut affecting the bearing would be a cut seal."

The technical words employed in the claims of Stein III are not easy to reduce to understandable language. It appears that a set-back was provided in the shell for the purpose of receiving an extended portion of the free race member. The illustration reminds us of the tongue and groove technique for obtaining a closer and better fit between two pieces of lumber or other objects. A seal in Stein III was not novel because a seal was disclosed in each of the preceding patents. In claim 4 of Stein I (heretofore quoted), it was referred to as a "running fit" and in plaintiff's brief it is stated, "The close running fit of the ball retainer hub and the free races serves also to counteract lubricant leakage in that vicinity." In Stein III, however, the inventive genius had advanced to the point where it is referred to in plaintiff's brief as a "more perfect seal." It is described by plaintiff's vice president, Rozner, as "a tight closure between the inside diameter of the shell and the outside diameter of the free race."

It is interesting to note that the Patent Office examiner rejected the claims of Stein III over the prior art, including Stein I and II. They were allowed, however, by the Board of Patent Appeals, with the following observation, "The distinctions as presented in claims 1, 2, 3 and 4 of the references are not great over the art but appear to have some patentable significance especially when it is recited that the metal of the free race ring is hardened and cuts into the shell to form a cut seal therewith. The prior art does not discuss such construction nor does it definitely show the spinning of the shell around sharp corners on the free race ring." The reason thus stated for upholding the validity of these claims is not impressive. After admitting that the distinctions over the prior art were not agreed, the Board thought they had some "patentable significance," without stating what it was other than that the claims recited that the "metal of the free race ring is hardened and cuts into the shell to form a cut seal therewith."

The Board evidently was not advised of the fact, as testified to by plaintiff's witness, Nordstrom, that in plaintiff's bearings manufactured under Stein I the shell was made of soft cold rolled steel and that the free race ring was made of hardened steel. The composition of the metal of the shell and race ring as called for in the claims of this patent can hardly be classified as novel when the same composition was used in the bearings which plaintiff had long manufactured. In this patent as in Stein II, the function of the bearing was not altered by the improvement, and its component elements remained the same. The most that can be said is that an improved result was obtained by bringing these two friction members into closer relationship. We think the improvement was well within the domain of the skilled mechanic and does not constitute patentable invention.

The district court evidently relied heavily upon plaintiff's commercial success in the manufacture and sale of its ball bearings. This certainly is impressive. But as said in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162, "But commercial success without invention will not make patentability." Moreover, even though the court found that between 1934 and 1950, over thirty-nine million of plaintiff's bearings were made and sold, it is not found nor is it discernible what portion of this success was attributable to the improvements of Stein II and III. As already noted, plaintiff in the years 1934–1936, manufactured and sold from two to three million bearings under Stein I. How many it would have manufactured and sold from 1936 to 1950, without the improvements of Stein II and III, is a matter of speculation but it is reasonable to think that the number would have been large.

The district court also appears to have been much impressed with the fact that the validity of the patents during many years of existence had not been under attack. The record discloses, however, that the instant suit is the first plaintiff has brought for their infringement. This no doubt accounts, at least to a considerable extent, for the fact that their validity has not heretofore been placed in issue. In any event, the fact that the attack upon their validity has been long delayed is of no benefit to plaintiff. Cf. Marconi Wireless Tele-

graph Co. of America v. United States, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731; General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L. Ed. 43.

In conclusion, we reiterate the warning oftentimes sounded that courts should not permit the extension of a patent monopoly beyond the time which Congress has prescribed, on the pretext that some patentable improvement has been added. Particularly is this so where the improvement encompasses not only that which is relied on for invention but also that included in a prior patent, as was done in the situation before us. True, Stein I has expired and, as plaintiff asserts, the whole world is free to use its disclosure. However, if a person attempted to do so and sought to improve its leakage defects by a slight alteration of its elements, as we think any skilled mechanic could do, he would, under plaintiff's theory, incur the risk of infringing either Stein II or III, or both. Thus, in reality, the right of the public in expired Stein I becomes of little, if any, practical worth.

The judgment as it relates to Stein I (No. 1,958,725) is affirmed. The judgment as it relates to Stein II (No. 2,140,818) and Stein III (No. 2,230,471) is reversed and the cause remanded, with directions that the suit as to them be dismissed.