**GENERAL FOODS CORP., Plaintiff-Appellant,**

v.

**TRIANGLE MANUFACTURING COMPANY, Defendant-Appellee.**

**No. 12143.**

United States Court of Appeals Seventh Circuit.

March 20, 1958.

Stuart S. Ball, William E. Lucas, Richard J. Flynn, Theodore R. Scott, Chicago, Ill., Michael J. Quillinan, White Plains, N. Y., Sidley, Austin, Burgess & Smith, Loftus, Lucas & Hammand, Chicago, Ill., of counsel, for plaintiff-appellant.

Sidney Neuman, Arthur Wm. Nelson, James R. Dowdall, Chicago, Ill., for defendant-appellee. Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., of counsel.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

DUFFY, Chief Judge.

This is a suit for patent infringement. The plaintiff named in the complaint was the S. O. S. Company. However, since the complaint was filed, General Foods Corp. has acquired the assets and property of the S. O. S. Company and has been substituted as plaintiff-appellant herein.

Involved in this suit are Claims 2 and 4 of United States Letters Patent No. 2,601,771 entitled "Cleaning Aid," which was issued July 1, 1952 upon the application of John A. Cameron filed March 28, 1951. The patent will hereinafter be referred to as the Cameron patent.

Claims 2 and 4 of the Cameron patent differ from each other only in that claim 2 specifies that the cleaning aid is made from a ribbon-like strand of plastic, whereas claim 4 recites that the cleaning aid is made from a saran strand having a prescribed cross-sectional area. The plastic commonly known as "saran" is a mixture of copolymers of vinylidene chloride and vinyl chloride.

Claim 4 of the patent broken down into its respective elements calls for:

1. A hand-compressible, self-restoring, non-matting cleaning aid comprising

2. an open mesh pad consisting of

3. spaced but slidably connected ribbon-like strands,

4. each comprising a mixture of copolymers of vinylidene chloride and vinyl chloride,

5. said strands having a cross sectional area substantially equal to the area of a circle having a diameter of .015 to .020 inch and

6. having a generally serpentine shape affording relatively stiff spring loops of substantially equal length and width,

7. with alternate semicircular curved end portions of the spring loops of adjoining strands loosely interlocked with one another

to afford relatively wide sliding action of interlocked loops against one another to effect a self-cleansing action of the pad by dislodging foreign substances in the interstices between the individual spring loops of the strands to facilitate flushing said substances from said pads and to prevent matting;

8. the end portions of the spring loops of said strands being disposed in edgewise position with respect to the outer surface of the pad,

whereby the edges of said strands may bear directly against surface to which the pad is applied.

The District Court found the claims in suit to be invalid on several grounds. The Court did not reach the question of infringement.

The District Court found the claims in suit invalid as claiming and covering no more than an unpatentable substitution of material. The Court also found the claims invalid as lacking patentable invention in view of prior art patents, publications and devices. The Court found the claims in suit were anticipated by the February, 1943 issue of a publication known as Chain Store Age. The Court also based invalidity of the claims on the patentee's admission that another person first recognized and suggested to him the use of a saran filament as being suitable for pot-cleaner purposes.

According to the embodiment shown and described in the patent, Cameron's pad is made as follows: 1) a tubular sleeve is conventionally knitted on a machine known in the trade as a seamless ribber, 2) a predetermined length of the sleeve is cut and then turned inside out, 3) by means of two tie strings the reversed sleeve is divided into three sections and 4) the pad is then completed by tucking the end sections back into and under the main or central section.

Plaintiff claims that prior to Cameron, the principal cleaning aids in addition to brushes, washcloths and the like, fell largely into two classifications. One was steel wool pads. The plaintiff and other companies sold pads of compressed steel wool, some of them including plaintiff's SOS pads being soap impregnated. The second classification was copper pads. The defendant corporation had, for many years, manufactured and sold a pot-cleaner of knitted copper wire and had marketed it under the trademark "Handy Mandy."

Plaintiff argues that both types of pads had disadvantages. Plaintiff says the copper pads obtained their cleaning effect due to the relatively hard edges of the copper filaments forming the pad; these copper pads scratched and marred relatively soft surfaces such as silver, china and porcelain, and matted when in use, and accumulated food residue thereby becoming unsanitary; that steel wool pads were not satisfactory for cleaning soft surfaces.

Plaintiff also stresses the commercial success of the Cameron cleaning aid. In November, 1951, it began manufacturing and selling this cleaning aid under the trademark "Tuffy." Plaintiff points out that seventeen million Tuffy pads were sold in the first 12-month period, and that by the end of 1956, more than forty-nine million Tuffy pads had been sold. Plaintiff emphasizes that these sales occurred in spite of a higher retail price than that at which copper and other metallic pot-cleaners were sold.

The District Court made detailed Findings of Fact. In Finding 10, the Court pointed out that prior to any work done by Cameron, the properties and characteristics of saran were well known; that saran monofilaments were

known to have such exceptional properties as high tensile strength, great flexibility, long fatigue life, and good elasticity. Saran was also known to be chemically resistant, not seriously affected by temperatures above that of boiling water, and that it cleaned easily. The Court further found that the contentions of plaintiff that Cameron was the first to recognize the well-known properties and characteristics of saran as suitable for use in a knitted kitchen cleaning aid, could not be sustained because the characteristics of saran were so well known that its use suggested itself as soon as a need of a copper wire replacement arose. The Court also found that Cameron knew nothing about plastics before working on his plastic cleaning aid, and that he received the suggestion for the use of saran in discussing his idea with William Levis of Milwaukee who was an experienced man in plastics. The Court also found that there is no record to base a finding that Cameron's conception occurred earlier than September or October, 1950.

As the trial court pointed out, Cameron cannot claim credit for originating either a flat or ribbon-like saran filament. These were old and well-known prior to 1950. The sizes of the strands specified by Cameron were substantially those of the ribbon-like copper wire then employed in the knitted copper cleaning aids in general use. We think there is substantial evidence in this record to sustain the District Court's finding that the Cameron patent in suit discloses nothing more nor less than the substitution of one material for another. The purpose, shape, structure and mode of use of the device of the Cameron patent are, for all practicable purposes, the same as the prior devices, the principal and almost sole difference being in the substituted material.

There was nothing ingenious in choosing a saran filament to replace copper wire at a time when it was thought copper wire would be unavailable. Justice Jackson's observation comes to mind when he stated in the opinion of the court in Sinclair & Carroll Co., Inc. v. Interchemical Corporation, 325 U.S. 327, 335, 65 S.Ct. 1143, 1147, 89 L.Ed. 1644; " * * * Reading a list and selecting a known compound to meet known requirements is no more ingenious than selecting the last piece to put into the last opening in a jig-saw puzzle. It is not invention."

■ We think the District Court was justified in concluding that no exceptional imaginative talent was exhibited by Cameron by merely recognizing the suitability for use of a ribbon-like plastic filament in place of a ribbon-like metallic filament. Also, that the alleged wider range of uses of the plastic pad were a foreseeable consequence of the selection of the particular plastic mentioned in the patent. We agree with the trial court that the conception and production of the device of the Cameron patent did not involve an exercise of invention but rather involved mere mechanical skill.

At least three prior art patents which were not considered by the Patent Office, disclosed knitted open-meshed metallic pot-cleaners. Kingman No. 1,482,016; Goodloe No. 2,427,274 and Steiner No. 2,500,715. These patents teach the preparation of a knitted sleeve from which the final pad or ball is formed. They differ mainly in the steps for the formation of the finished pad. The material from which the sleeves in each patent is knitted is a narrow, flat, ribbon-like metallic strand. Defendant's expert testified that Cameron's loops were no more than the "plain loops" of ordinary knitting "interlocked by the knitting process in the usual manner;" and that the patents showed loosely interlocked plain loops which "slide in relation to each other;" and that the loops of the prior structures were of serpentine shape, being "identical" ones or "equal in size," thus providing a "balanced loop formation."

The District Court found that Kingman's pad was "resilient or elastic," that Goodloe's pad was "non-matting and not easily crimped or deformed," and that Steiner's pad was a "hand compressible, self-restoring and non-matting" imple-

ment, and that the structural and operational features which the Examiner had supposed to be new in Cameron, were old in the three patents hereinbefore mentioned. We agree with the analysis made by the District Court.

The trial court found that the cleaning pad of Cameron was anticipated by the February, 1943 issue of Chain Store Age. That issue contained a picture and brief description of an improved plastic scouring pad which was ball-like in shape and obviously of an open-mesh type. It was described as having the same "mesh construction as former metal type of pot cleaners." The publication did not indicate the type of plastic material to be used or the size of the cross-section of the knitted strands. However, plaintiff's expert did admit that the plastic strands were interlocked and slidably connected as in the metal type.

In Dewey & Almy Chemical Co. v. Mimex Co., Inc., 2 Cir., 124 F.2d 986, at page 989, the Court said: "No doctrine of the patent law is better established than that a prior patent or other publication to be an anticipation must bear within its four corners adequate directions for the practice of the patent invalidated. If the earlier disclosure offers no more than a starting point for further experiments, if its teaching will sometimes succeed and sometimes fail, if it does not inform the art without more how to practice the new invention, it has not correspondingly enriched the store of common knowledge, and it is not an anticipation."

We do not think the brief article and picture in the February, 1943 issue of Chain Store Age was an anticipation. However, taken in connection with the teachings and disclosures in Kingman No. 1,482,016, Goodloe No. 2,427,274 and Steiner No. 2,500,715, we must agree with the District Court that the conception and production of the Cameron pad did not amount to invention, but rather involved only mechanical skill.

Plaintiff earnestly insists that the commercial success of its "Tuffy" pad is strongly persuasive of patentable invention. Temco Electric Motor Company v. Apco Mfg. Co., 275 U.S. 319, 323, 48 S. Ct. 170, 72 L.Ed. 298; E. R. Wagner Mfg. Co. v. Porter Steel Specialties, 7 Cir., 116 F.2d 63, 67. The Supreme Court has stated that the factor of marked commercial success is "entitled to weight in determining whether the improvement amounted to invention and should, in a close case, tip the scales in favor of patentability." Goodyear Tire & Rubber Co., Inc., v. Ray-O-Vac Company, 321 U.S. 275, 279, 64 S.Ct. 593, 595, 88 L.Ed. 721.

It is well established, however, that commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Super-Market Equipment Corporation, 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Aetna Ball & Roller Bearing Co. v. Standard Unit Parts Corp., 7 Cir., 198 F.2d 222, 229. In the case at bar the trial court found that tremendous sums were expended by plaintiff in advertising its plastic cleaning pad, ranging from 60% to 19% of gross sales. That Court said: "These are exorbitant and disproportionate advertising costs, indicating that acceptance and extensive sales have not genuinely been due to the merits of the alleged invention. Moreover, the two cleaning pads or aids upon which Cameron avowedly sought to improve, namely, the steel wool pad and the knitted metallic copper mesh pad, are still extensively sold and used and have not been displaced or replaced by the device of the patent in suit." We agree that the case at bar is not one where commercial success can tip the scales in favor of patentability.

The Findings of Fact which have heretofore been specifically mentioned, and indeed, other Findings of the Court not discussed in this opinion, are substantially and adequately supported in the record. We cannot say that they are clearly erroneous. Under Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.

C.A., such findings should not be set aside by this Court. Hazeltine Research, Inc., v. Admiral Corp., 7 Cir., 183 F.2d 953, 954. The Conclusions of Law except on the one point of anticipation, are justified by the Findings. The Conclusions of the trial court that Claims 2 and 4 of the patent in suit are invalid, must be and are sustained.

Affirmed.