## CARLSON & SULLIVAN, Inc. v. BIGELOW & DOWSE CO. et al.

### No. 4687.

United States Court of Appeals, First Circuit.

March 19, 1953.

Rehearing Denied April 9, 1953.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment dismissing a complaint alleging infringement of United States Patent No. 2,510,939 for a ruler construction, which issued on June 6, 1950, to Fred O. Carlson, assignor by mesne assignments to the plaintiff-appellant. The case was tried in the court below sitting without a jury during late January and early February, 1952; the judgment appealed from was entered on April 4, 1952, and this appeal was argued on January 8, 1953.

■ We set out the foregoing dates because the plaintiff-appellant's first contention is that the judgment from which it appeals should be reversed for the reason that the court below "in ruling plaintiff's patent invalid for lack of invention over the prior art acted at variance with the legislative policy expressed" in Title 35, United States Code, specifically § 103 thereof, which was enacted on July 19, 1952 and by its terms became effective on January 1, 1953, just one week before this case was argued on appeal. We find no merit in this contention.

Certainly it would be unlikely that Congress would intend any change it might make in the test for patentable invention to apply to cases tried and decided in the district court before the statute effecting the change was enacted, and which were pending on appeal when the statute went into effect. And it seems clear that Congress had no such intention, for in § 4(e) of the statute enacting Title 35, United States Code into law, 66 Stat. 792, 815, it is provided: "Nothing contained in Title 35, as enacted by section 1 hereof, shall operate to nullify any judicial finding prior to the effective date of this Act on the validity of

Daniel L. Morris, New York City (Hector M. Holmes, Boston, Mass., Edward G. Curtis, Marshall M. Holcombe and Curtis, Morris & Safford, New York City, on the brief), for appellant.

T. Clay Lindsey, Hartford, Conn. (Robert L. Thompson, Boston, Mass., and John M. Prutzman, Hartford, Conn., on the brief), for appellees.

**1.** Sec. 4(a). "This Act shall take effect on January 1, 1953 and shall apply to all applications for patent filed on or after such date and to all patents granted on such applications. It shall apply to further proceedings on applications pending on such date and to patents granted on such applications except as otherwise provided. It shall apply to unexpired patents granted prior to such date except as otherwise provided."

any patent by a court of competent jurisdiction." This provision is decisive, and the appellant can draw no comfort from the last sentence of (a) of § 4 id., quoted in full in the margin,[1] wherein the Act is made to apply to unexpired patents granted prior to the effective date of the Act. The reason for this is that the sentence referred to makes Title 35 applicable to unexpired patents only "except as otherwise provided", and (e) quoted above clearly does provide otherwise with respect to findings on the issue of validity made prior to January 1, 1953. Thus we find no present occasion to consider what change in the test for patentable invention Congress intended to make by § 103, supra, if, indeed, it intended by that section to make any change at all.

The ruler covered by the Carlson patent consists of a thin steel ribbon, concavo-convex in cross section, called the blade, typically six feet long, by about half an inch wide, and graduated in inches and fractions thereof, which is coilable when not in use in a D-shaped metal casing two inches long, about one and three-quarters inches across and about three-eighths of an inch thick. The blade is withdrawn from the case through a transverse slot in one end of the case so positioned that the blade projects parallel with, and in effect forms a longitudinal extension of, the straight portion or bottom of the D-shaped case, thereby making it possible to take accurate inside measurements simply by adding two inches to the reading of the rule. The inner end of the blade is attached end to end to the outer end of a wind-up spring, also coiled in the case, the inner end of the spring being attached to a transverse stud in the center of the case. The function of this spring is to facilitate pushing the ruler back into the case; not to snap the ruler back which for obvious reasons would not be desirable.

Push-pull rules of the general type described were admittedly not new with Carlson. Concavo-convex blades coilable in both circular and D-shaped cases and wind-up springs to facilitate coiling the ruler in the case were concededly old in the art. The novelty claimed for Carlson, so far as this suit is concerned, lies in three features: (1) automatic braking action of a novel type, the purpose of which is to retain the blade at every degree of its extension from the case, claims 2 and 16; (2) extensibility of the wind-up spring outside the case, and a hole therein for insertion of a pin such as a nail or match stick to prevent accidental retraction of the spring, so that a worn-out or damaged blade can be readily replaced without taking the case apart, claims 10, 13, 14, and 17; (3) the particular form of the coupling joining the spring and the blade, claims 6, 7, 8, and 11.[2]

Carlson's automatic braking action is said to be attained by bending or crimping the blade in a passageway through which it is drawn out and pushed back into the case, which bending or crimping automatically increases as the blade is progressively withdrawn, thereby increasing friction on the blade and so counterbalancing the increasing tendency of the spring to return the blade to the case. This automatic increase in the bending of the blade is accomplished by passing the blade between what are described in the patent as "a pair of parallel, ramp-like surfaces," which are designated as "upper and lower ruler guides," placed inside the case behind the slot through which the ruler emerges from the case and "set at a slight angle with respect to the plane determined by the bottom of the case." As the blade is withdrawn, the circle formed by the part thereof remaining coiled in the case naturally decreases in diameter, so that with Carlson's construction the angle of the bend forced upon the blade by the upper and lower guides through which it passes increases with extension of the blade.

Upper and lower ruler guides parallel with the base of a D-shaped case were admittedly old in the push-pull ruler art. The novelty of Carlson's claims 2 and 16 lies in the downward tilt of the guides—their an-

2. Claims 12 and 15 are also in suit, but they are omnibus claims covering the features and elements covered by the claims listed above in the body of the opinion. In the view we take these two claims do not need to be considered separately.

gular relationship to the bottom of the case. The court below found that this feature provided "a more effective method of keeping a ruler in a desired withdrawn position," and that no prior art ruler "strictly anticipates this feature." But the court said: "On the other hand, while this represents an improvement in the art, it is not such a substantial innovation as to amount to invention or discovery." The court also found these claims not infringed by the defendant's accused construction.

The appellant cannot successfully attack the above finding of invalidity on the ground that the District Court too strictly applied the test for patentable invention. It is the law, at least it has been the law since Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438, was decided in 1882, that the purpose of the patent laws "is to reward those who make some substantial discovery or invention," not "to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures." 107 U.S. at page 200, 2 S.Ct. at page 231. Clearly this traditional test is the one the court below applied when it said that the patentee's improvement in the art did not amount to a substantial enough innovation to amount to invention. And we are convinced by a study of the record and the exhibits that this finding is fully supported by the evidence. Indeed, we think the court below gave the appellant the benefit of the doubt when it said that Carlson's feature represented an "improvement in the art" in that it provided a "more effective method" for keeping the the ruler in any desired withdrawn position, for so far as we can tell from the exhibits, Carlson's ruler shows little if any improvement in this respect over the rulers of the prior art.

The second group of claims covering extensibility of the spring outside the case, and a hole therein for insertion of a pin to prevent the spring from accidentally snapping back into the case during the operation of changing an old blade for a new one, falls by application of the same test. Assuming that there is both utility and novelty, instead of mere sales appeal, in a push-pull rule so constructed that its blade can be readily changed for a new one when the old one becomes worn out or damaged, the expedient of making the return spring long enough to extend outside the case for the purpose of ready access to the coupling joining it to the blade, and putting a hole in the end of the spring for insertion of a pin to prevent accidental return of the spring into the case, is certainly not more than one would expect from a person skilled in the art. At the most it seems to us a mere mechanical adaptation of the prior art rulers wherein the spring was not extensible outside the case because it was not made long enough. We cannot see invention in lengthening the spring to make its outer end accessible outside the case, and putting a hole in it to receive a pin, such as a nail or match stick, to prevent its accidental retraction.

The remaining group of claims, those covering the coupling whereby the blade and the spring are joined end to end, covers a keyhole shaped aperture in the inner end of the blade, notches cut on opposite sides of the outer end of the spring which is then tapered to a tongue shape, and a hole or holes, or a slot or slots, cut in the blade an appropriate distance in from the keyhole shaped opening to receive the end of the tongue at the end of the spring. With this construction the end of the spring is inserted through the keyhole in the ruler, the notches in the spring are engaged with the sides of the keyhole adjacent its flat end, and then the end of the tongue is slipped through one, or woven through two, depending upon the type of construction employed, of the holes or slots provided for its reception. The advantages claimed for this construction are that it provides a coupling which holds the blade in longitudinal alignment with the spring, and which is so flexible and flat that it does not interfere with the coiling of the blade in the case.

These advantages may exist, but granting all the advantages the appellant asserts for its coupling, the fact remains that the appellee's coupling is quite different. Stanley inserts the end of its spring through a hole in the end of its blade as

Carlson does, and it has notches opposite one another near the end of its spring for engagement with the sides of the hole in its blade. But Stanley's hole is pear shaped and the end of its spring is cut off short beyond the notches, instead of terminating in a tongue. Naturally, therefore, it provides no holes or slots in its blade for the reception of a tongue. Instead of a tongue, Stanley uses a transverse clip, riveted across the inner end of the blade, which is crimped over the edges of the blade and spring where they overlap to lock the spring and blade together in alignment. Thus it is clear that although Stanley's accused coupling structure accomplishes the same purpose as the patentee's, it does so by entirely different means. Hence Carlson's coupling claims are not infringed even if they are valid, which we think is open to some doubt.

The judgment of the District Court is affirmed.