## STANLEY WORKS v. ROCKWELL MFG. CO.
### No. 10891.

United States Court of Appeals Third Circuit.

Argued March 2, 1953.

Decided April 13, 1953.

William A. Strauch, Washington, D. C. (John D. Nies and Strauch, Nolan & Diggins, Washington, D. C., on the brief), for appellant.

T. Clay Lindsey, Hartford, Conn. (John M. Prutzman, Hartford, Conn., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this action for a declaratory judgment plaintiff-appellee sought to have defendant's patent declared invalid. The defendant counterclaimed for infringement and asked for damages and an accounting. The district court found that defendant's particular patent claim involved was invalid for lack of invention and therefore, and quite properly, did not reach the question of infringement.

The dispute centers entirely around Claim No. 6 of Tautz Patent No. 2069395, granted February 2, 1937, and owned by defendant. As stated in the patent: "The invention relates to safety shields for grinding wheels *and the like,* and has for an object to provide a safety shield which will effectively guard a user of a grinding wheel from flying particles and afford shadowless illumination of the wheel and work viewed through the shield." (Emphasis supplied.)

In the paragraph immediately preceding the claims of the patent the statement is made that "While the safety shield is here shown to be applied to a grinder *it may be applied to other machines or devices.*" (Emphasis supplied.) Claim No. 6 of the patent reads:

"6. A safety shield comprising a housing having a top wall and a skirt, said top wall having an opening, a transparent panel for said opening for viewing work therethrough, and means carried by said housing for directing light onto the work from regions adjacent the opposite sides of said panel and within said skirt."

The type of safety shield involved is useful primarily, as the district court stated, " * * * in tool touch up and sharpening and for light grinding operations."[1]

In the trial court's view the Acme shield manufactured under the Kelleher patent, granted January 21, 1927, while larger and less efficient than the Tautz construction " * * * nevertheless performs the useful functions of adequately lighting the exposed periphery of a grinding wheel and the sides thereof, and protects the face and eyes of the operator from flying particles." The Acme shield was on the market prior to the allowance of the Tautz patent and it is still being produced. Also in evidence was a shield made by the Surty Manufacturing Company continuously since 1932. The court found that shield adequate for lighting the working portion of a grinding wheel and protecting the operator; further, that when it was moved slightly sideways in either direction it would sufficiently take care of side illumination.

The important difference between the Kelleher and Surty shields and that of Tautz is that both the former used one light while the Tautz shield has two. As to this the court said that the single light though adequate "was not as bright or intense as that provided by the two-bulb structures." It added that the employment of a second light was a useful improvement but that it was not a patentable improvement because " * * * Tautz merely incorporated the well known lighting principle of nonglare illumination into the old safety shield and improved its lighting efficiency."

There is convincing evidence in the record justifying the conclusion that non-glare illumination was well known long prior to the Tautz patent application. Various contrivances then existed possessing two lights or more and used in show-cases, scales, mirrors, typewriters and the like to " * * * effect nonglare lighting in areas to be viewed from different angles." Seven patents of that type are cited by the district court. Among them is Loveberg, Patent No. 1409114, allowed in 1922 and called "Picture Illuminator". Its purpose was to overcome defects of illumination of pictures, particularly oil paintings. It arranged two light bulbs longitudinally much the same as in appellee's Stanley shield which appellant contends infringes the Tautz patent.

The trial court also found, with abundant reason, prior art in magnifying devices antedating Tautz. In the 1934 Jones patent the viewing glass was a magnifying lens whereas the Tautz patent used ordinary glass. Aside from this the Jones device operated on the same principle of nonglare illumination as Tautz. The Lindsay patent, issued in 1934, also a magnifier, was a non-glare circular group of lamps which eliminated shadows and glare in the lighting of the object or work to be viewed. Two Schaaff patents, one British, 1926, and the other Swiss, 1928, covering similar structures, embodied, as the court found, the basic non-glare illumination principle of Tautz by directing light from the sides of a transparent panel. The court expressly held that the 1916 Klorer patent, No. 1,175,274, recognized that in a chip guard or eyeshield for lathes " * * * a device containing a magnifying lens may be employed as an eyeshield and that a plain glass may be substituted therefor in the panel."

---

[1] Though not of decisional importance here it is clear from the above emphasized language that the Tautz patent was not intended solely for use with grinders. At least two of appellant's witnesses supported that construction.

There was evidence that the kind of viewing structures illustrated by the Jones, Lindsay and Schaaff patents and having magnifying glass in the window or panel could be used and was advertised for use as eyeshields or guards for grinding wheels and the like where protection was necessary and where magnification of the viewed work helped obtain more accurate and precise results. A demonstration in the courtroom during the trial illustrated this convincingly in the opinion of the district judge. While appellant disputes the methods used in that test and points to testimony that magnifying glasses are impractical for use on grinders, at most disagreement with the particular finding of the district judge is indicated and not that there was no sound basis for the finding.

■ The use of more than one light in an effort to obtain satisfactory illumination in viewing devices was old when Tautz patented his shield in 1937. Substantially that same shield with one viewing light had been in existence since 1927. The addition of a second light for better visibility followed logically from that background. It was a result to be expected by one of ordinary skill in the art. It was not a new combination of old elements producing a distinct contribution to viewing illumination but simply a more practical adjustment of then existing lighting arrangements. It emanated directly from the Kelleher patent and the various non-glare lighting methods current at the time. We think the district judge was justified in finding, as he did, that it " * * * calls for a mere aggregation of a principle of old parts or elements, which in the aggregation performed no new or different function or operation than heretofore performed or produced by them." We think that under settled law Tautz Claim No. 6 was not a patentable invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971.

■ In 1944, Claims Nos. 6, 7 and 8 of the Tautz patent were held valid by the district court of the Eastern District of Wisconsin in Delta Mfg. Co. v. E. L. Essley Machinery Co., 63 F.Supp. 930. That decision was affirmed in 7 Cir., 1946, 153 F.2d 905, certiorari denied 1946, 328 U.S. 867, 66 S.Ct. 1376, 90 L.Ed. 1637. Appellant is correct in its acknowledgment that the Delta case does not govern this appeal. It is incorrect in asserting that Delta was decided " * * * on a completely comparable record." In Delta the accused structure was almost identical to the Tautz shield whereas the presently accused Stanley shield with its lights to the rear of the apparatus differs from both shields in the Wisconsin suit. In that litigation infringement of Tautz Claim No. 7 was admitted and there was no reliance on the defense of non-infringement on appeal. In the Delta decision the Tautz Patent was construed as limited to grinder use. That restriction is absent from this case. The district court did find, as we have already stated, that the primary use was in tool touch-up and sharpening and other light grinding operations, but that is far different than the Delta holding. The evidence in the present record with respect to the prior art Surty and Acme shields differs from that in the Wisconsin action, particularly with reference to the effective courtroom demonstration of those shields given in the trial below. That same difference applies to the magnifying devices.

■ Finally and most important, in the Delta litigation because of the doubt of both the trial and appellate courts regarding the patentability of the Tautz device proofs of the filling of a long felt want and commercial success were considered. In this suit the district judge had no such doubt but rather a clear conviction that Tautz Claim No. 6 lacked patentable novelty. For that reason, though he seriously questioned the alleged filling of a long felt want and the commercial success of Tautz, he rightly held those elements immaterial under his affirmative finding of invalidity. Bulldog Electric Products Co. v. General Electric Co., 4 Cir., 1939, 105 F.2d 466; Electroline Co. v. Reliable Electric Co., 7 Cir., 1939, 101 F.2d 380.

Appellant next urges that the 1952 revision of Title 35 U.S.Code, 66 Stat. 792, which took effect January 1, 1953, is controlling and that under Section 103 of that title Tautz Claim No. 6 is plainly patentable. Section 103 reads:

"Conditions for patentability; non-obvious subject matter

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which, said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

 On its face Section 103 is merely a codification of decisional patent law. The report of the Senate Committee on the Judiciary (Vol. 38, No. 8, Journal of the Patent Office Society of August 1952) leaves no doubt about this. In part that report states:

"Section 103, for the first time in our statute, provides a condition which exists in the law and has existed for more than 100 years, but only by reason of decisions of the court. An invention which has been made, and which is new in the sense that the same thing has not been made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent. That has been expressed in a large variety of ways in decisions of the courts and in writings. Section 103 states this requirement in the title. * * *"

The only reported cases to date on the point are to the same effect. Carlson & Sullivan, Inc. v. Bigelow and Dowse Company, 1 Cir., 1953, 202 F.2d 654; Thys Company v. Oeste, D.C.N.D.Cal.1953, 111 F.Supp. 665.

Entirely aside from the above, the 1952 Patent Act by its terms is inapplicable to this issue. Section 4(e) of the Act, 35 U.S.C.A. note preceding section 1, provides that:

"Nothing contained in Title 35, as enacted by section 1 hereof, shall operate to nullify any judicial finding prior to the effective date of this Act on the validity of any patent by a court of competent jurisdiction."

That statutory language cannot be easily misinterpreted. The decision of the district court holding the Tautz patent Claim No. 6 invalid, rendered prior to the effective date of the Act, is expressly without the scope of the Act.

The judgment of the district court will be affirmed.