**Richard A. FISCH and Anchor Plastics Co., Inc., Plaintiffs-Appellants,**

v.

**William GOULD, Doing Business as Stay-Rite Supply Co., and Keystone Plastics, Inc., Defendants-Appellees.**

**No. 12145.**

United States Court of Appeals Third Circuit.

Argued May 6, 1957.

Decided June 28, 1957.

Rehearing Denied Aug. 13, 1957.

**6**

George B. Finnegan, Jr., New York City (Jerome G. Lee, Orville N. Greene, New York City, Pitney, Hardin & Ward, Newark, N. J., on the brief), for plaintiffs-appellants.

Howard J. Churchill, New York City (David Trauth, Newark, N. J., Robert M. Freeman, New York City, on the brief), for defendants-appellees.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The district court held the disputed process patent invalid for lack of invention and plaintiffs appeal.

The patent is United States patent No. 2,531,234 issued November 21, 1950 to Peter H. Seckel. Without contradiction, as set out in the patent, the process consists of melting two or more incompatible thermoplastic fiber-forming linear-polymeric compositions, introducing them into a conventional extruding machine and extruding them into thin linear strips. The two plastics given in the patent example are cellulose acetate and cellulose acetate butyrate. The unitary product obtained consists essentially of two distinct series of parallel threads or fibers adhered together and has a high resistance to breaking as the result of repeated flexing. The strips are very useful as corset stays and similar stiffening reinforcements for ordinary or protective wearing apparel or in any material which is apt to be subjected to repeated flexing.

The district court concluded from the prior art and testimony interpreting it that the process would have been obvious to a person with ordinary skill in the art. Reliance was placed primarily upon the Goessling Patent No. 2,353,457 issued July 11, 1944, the sole prior art product mentioned by the court resulting from joining two incompatible plastics. It, as the court stated, consisted in " * * * mixing two incompatible thermoplastic resins to produce a resin having an appearance similar to pearl; the pearl effect is achieved by mixing the molding powders of two clear plastics or of one clear plastic and one translucent plastic and *heating them in an injection molding machine to produce a molded article.*" (Emphasis supplied). The result of this as described in the Goessling patent is " * * * a laminated or stratified structure, somewhat resembling that of mica * * *." The Goessling product did have a pearl colored or opaque appearance. Its character as named in the patent itself was "purely decorative." The essential difference between the Goessling structure and the suit patent was that the latter by its extrusion process obtained the flexible longitudinal strips, highly usable in the manner the patent asserted. That use was not only impossible of achievement by the molding method but was not within the contemplation of the Goessling objectives which called for a rigid, brittle, mica like article, the exact opposite of the patent here.

The Jacqué Patent, No. 2,185,789, issued January 2, 1940, referred to by the trial court as prior art, deals with spinning off threads from a single thermoplastic. In the third example given in that patent, by using after-chlorinated polyvinyl in a silk twisting machine "fine threads having a curling like wool" were obtained. There is not the slightest suggestion in this patent of the Seckel process and performance. Nor has the Dreyfus patent, No. 2,050,286, issued August 11, 1936, any indication of Seckel's mixture of incompatible plastics and its end result of a flexible strip composed of in-

ternal fibrils. The Malm patent, No. 2,-223,376, issued December 3, 1940, deals with a yarn made from cellulose acetate butyrate. There is no combination of plastics, no extrusion of them, no fibrils. Finally, the court alludes to an article by James Bailey which has to do with stretching monofils from a single plastic material, polystyrene. According to the witness DeBell, it is stiff. Asked if the product is flexible he said, "Not until it is broken to pieces." Two other patents referred to by appellees, Carothers, No. 2,071,252 and Dickie and Moncrieff, No. 2,089,947, issued August 17, 1937, render no assistance to the contention that the litigated process was anticipated.

All in all the prior art revealed no hint of combining two incompatible plastics to form a solid mass of fixed fibrils. Indeed appellees' principal argument to us is not so much that the disputed method appears from the above listed prior art but that it derives directly from a procedure in the trade known as "purging". That consists in cleaning extruders by pushing out the balance left of old material with the different material about to be used. This combination, according to witnesses, contaminated both materials and, said the witnesses, on occasion fiber structures were present. The Director of Research at Tennessee Eastman, having noticed this and various blemishes, reported to the president of the company and thereafter warned the trade that cellulose acetate and a butyrate should not be mixed. The net of all that type of testimony was that in "purgings" fibrous characteristics had been observed in material which was spongy, pimply, stringy, under strength, tended to peel off, laminate, shatter and fall apart. The testimony is unimportant in this case. It would be unjust to invalidate this patent on such flimsy evidence. In passing, we find no word of support for it in the opinion of the district judge.[1]

It is true appellants claimed in their brief to the district court that their invention is a giant stride in the plastics art and that the court held it was "no giant stride". However, we do not think either the assertion or that part of the decision disposing of it was necessary. In this court the so-called flash of genius test is not accepted as a fair standard for judging patentability. Section 103 of the new Patent Act,[2] as we said in one of the earliest cases commenting on it, was intended to codify decisional patent law.[3] "The difficulty" as Judge Kalodner so well stated in his Palmer opinion[4] "always existed in the application of the law, because to a large extent the standards have been indefinite and subjective. And judicial attempts to improvise expressions covering that which had been said many times before account for numerous descriptive phrasings of an elusive concept. The Act was intended to achieve the objective of stabilizing the law through legislative expression which becomes the touchstone of the decisions." One phrase which had found its way into decisions and used largely out of context was "flash of creative genius".[5] The last sentence of Section 103 was directed especially to the elimination of the meaning which in some opinions had been ascribed to that language. The sentence reads: "Patentability shall not be negatived by the manner in which the invention was made." In so endeavoring to bring an end to the misuse of the dangerously attractive phrase, as we see it, there was a real stabilization, a true codification of sound patent law which applied here brings us to the conclusion that the combination in this instance of the incompatible plastics, processed as it is, has produced a new and useful result

1. The only reference made by the court to expert testimony at the trial was in connection with the prior art.

2. 66 Stat. 792, 35 U.S.C. § 103.

3. Stanley Works v. Rockwell Mfg. Co., 3 Cir., 1953, 203 F.2d 846, 849.

4. R. M. Palmer Company v. Luden's, Inc., 3 Cir., 1956, 236 F.2d 496, 499.

5. Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58.

**8**

which called for more than the ingenuity of a mechanic skilled in the art. It was not anticipated by the prior art. It is a worth-while valid invention.

The judgment of the district court will be reversed. The cause will be remanded with the direction to enter judgment in favor of the plaintiff for the admitted infringement and for such other proceedings as may be indicated.