**DOLLAC CORPORATION, Plaintiff-Appellee,**

v.

**MARGON CORPORATION, Defendant-Appellant.**

**No. 12869.**

United States Court of Appeals Third Circuit.

Argued Oct. 20, 1959.

Decided Feb. 25, 1960.

Maxwell James, New York City (William Rowe, Steelman, Lafferty & Rowe, Newark, N. J., on the brief), for defendant-appellant.

Morris Kirschstein, New York City (Kirschstein, Kirschstein & Ottinger, New York City, on the brief), for plaintiff-appellee.

Before GOODRICH and KALODNER, Circuit Judges, and WOOD, District Judge.

KALODNER, Circuit Judge.

Plaintiff, Dollac Corporation, and defendant, Margon Corporation, are both manufacturers of artificial doll eyes. Plaintiff sued defendant in the court below for infringement of the Brudney Patent, No. 2,753,660, "Doll's Eyes", of which it is the assignee. Defendant answered attacking the validity of the Brudney Patent and denying infringement, and counterclaimed charging plaintiff with infringement of the Samolewitz Patent, No. 2,657,500, of which it is the assignee. Plaintiff then filed a reply and counterclaim; in the former it denied infringement and challenged validity of the Samolewitz Patent, and in its counterclaim sought, among other things, a declaratory judgment on the issues of patent infringement and validity.[1]

At the opening of the trial, the plaintiff conceded invalidity of the claims of its Brudney Patent which it had placed in litigation, and the cause proceeded on the issues, among others, of validity and infringement of the defendant's Samolewitz Patent. The District Court found the relevant claims of that patent to be invalid because of lack of invention over the prior art, and entered judgment accordingly. Defendant now seeks review of that determination.

The patent in suit is for a new doll eye combination. The District Court painstakingly detailed the patentee's claims, analysed the prior art, and applied the appropriate patent law. It concluded that "the conception required nothing more than a knowledge of the art and the expected skill of the artisan; it required no more ingenuity than that of a mechanic skilled in the art." D.C.D. N.J.1958, 164 F.Supp. 41, 55. We think the learned District Court was correct in what it said, and in the standard it applied. Central Manufacturing Co. v. B-M-K Corporation, 3 Cir., 1958, 255 F.2d 927; Fisch v. Gould, 3 Cir., 1957, 246 F. 2d 5; cf. R. M. Palmer Co. v. Luden's, Inc., 3 Cir., 1956, 236 F.2d 496.

The objective of the claimed invention is to achieve a superior doll eye, resembling the blackness of the human pupil and the coloration of the human iris, which appears lighter toward the pupil and darker toward the periphery, without the aid of extraneous coloring material to the pupil or the iris. By justly assuming familiarity with the thorough opinion rendered in the District Court, we need not set out the patent claims in detail. It is enough to say that the patent employs an outer hemispherical shell of plastic, the lens portion of which is transparent. The deep black pupil is obtained by leaving the pupil portion of the lens transparent, and the eyeball is employed with a doll head which is otherwise light proof, so that it has a dark interior. The colored iris portion is obtained by tinting of the transparent material, as with brown for a brown eye, or blue for a blue eye. The back of the iris is roughened or serrated to obtain a reflection of light making the colored tint visible despite the black interior of the doll head, and also without requiring the use of extraneous coloring material. The gradation in color of the iris is obtained by so constructing the reflective

1. Other issues raised in the court below by the parties concerning appropriation of trade secrets, unfair competition and violation of the anti-trust laws, are not involved in this appeal.

serrations as to produce an appearance of graduated tinting of the iris so that it is darker near the periphery and lighter near the pupil. This is accomplished by greater spacing of the serrations near the periphery than the pupil. Summarily stated, this is the combination defined in the claims.

After a review of the prior art, which, again, need not be duplicated here, the District Court concluded as follows:

"The purported invention of each of the claims in suit comprises nothing more than an aggregation of structural elements known in the art, to wit, first, a hemispherical eye shell of opaque white plastic to simulate the eyeball; second, an annular component of transparent or semi-transparent plastic suitably tinted to simulate the blue or brown color of the iris, disclosed by Cohn; third, a conical or frustro-conical surface, at the rear of the said iris component, radially or semihelically serrated from the peripheral rim of the iris component to the periphery of the inner-annular component to simulate the iris lines, disclosed by Marcus, Grubman and Cohn, and otherwise known in the art; and fourth, an inner annular component of transparent plastic, the rear surface of which is devoid of extraneous coloring matter to simulate the pupil, disclosed by Grubman. The lens member, which embodies the iris and pupil components, is molded of a single piece of suitably tinted plastic." [2] 164 F.Supp. at page 53.

We entertain no reservation as to the correctness of this statement, so amply documented by the District Court. The patent in suit itself confesses that in certain doll eyes it has been customary to provide radial serrations for the express purpose of simulating natural iris lines, but claims discovery of a reflection of incident light in contrast with an adjacent non-reflective pupil portion. However, as indicated by the District Court, nothing distinguishes the serrated surface defined by Samolewitz from that described by those who preceded him except the function ascribed to it. Cf. General Electric Co. v. Wabash Appliance Corp., 1938, 304 U.S. 364, 371, 58 S.Ct. 899, 82 L.Ed. 1402. So also, the Grubman Patent is explicit in stating that the black-appearing pupil may be achieved in exactly the manner employed by Samolewitz.

The defendant's answer is that Grubman neither claimed nor used his disclosure, nor did the others use their claims or disclosures, to accomplish the natural appearance of the pupil and the iris without the application of extraneous coloring to these components.

This, however, even if conceded, does not make a patentable invention. To assemble the teachings of others and yet produce a device validly patentable, there must intervene, as we have already stated, more ingenuity than that of a mechanic skilled in the art. It is settled teaching of the patent law that the aggregation of old elements which, in the aggregation, perform or produce no new or different function than that performed or produced by them theretofore, is not patentable invention. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. And, we are told, combination patent claims should be scrutinized with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162.

Applying these principles, and giving to the ultimate finding of the District Court its due, R. M. Palmer Co. v. Luden's, Inc., supra, 236 F.2d at page 498, we are bound to conclude that the defendant's patent does not meet the required

2. The patents named are Marcus Patents Nos. 1,763,312 and 2,254,232; Cohn Patent, No. 2,425,510; and Grubman Patent, No. 1,963,129.

standard of patentable invention. What Samolewitz accomplished was that which a skilled artisan could be expected to accomplish with a knowledge of the prior art.

For the reasons stated, the judgment and decree of the District Court will be affirmed.