**Carlton H. WINTERMUTE, Plaintiff-Appellant,**

v.

**HERMETIC SEAL CORPORATION.**

No. 13003.

United States Court of Appeals Third Circuit.

Argued Jan. 21, 1960.

Decided June 8, 1960.

Arthur Auslander, New York City (William A. Consodine, Newark, N. J., Smith & Auslander, New York City on the brief), for appellant.

Philip G. Hilbert, New York City (Ravin & Ravin, Newark, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiff, Carlton H. Wintermute, commenced this action in the court below to enjoin infringement of his patent, No. 2,454,244, and for other relief. The substituted defendant, Hermetic Seal Corporation, successor insofar as this case is concerned to the two original defendants as a result of Chapter XI proceedings, pressed the assertion of the invalidity of the patent in issue, which the District Court sustained. 171 F.Supp. 770. This appeal followed.

Most of us are aware of the fact that each radio transmitting station is assigned a definite transmitting frequency, and that to avoid interference it is essential to maintain that frequency constant. Piezo-electric quartz crystals will enable radio circuits to maintain selected frequencies and in modern radio circuit frequencies such crystals are employed for control. It is essential to maintain the stability and activity of the crystal for efficient results. And efficient results are of utmost importance in the light of requirements imposed by modern facilities and usages.

As with many other things and in many other fields, critical deficiencies in existing equipment were exposed by the adverse conditions of use dictated by World War II. In the relevant instance, the use of compact radio equipment in which crystals were essential components, in tropical zones, exposed the fact that equipment suitable in ordinary climatic conditions fell somewhat short of military needs. Moisture, fungus and other contaminants affected the crystal activity because of the close clearances involved, and temperature and physical stress affected the crystal stability, i. e., the ability of the crystal to stay at a given frequency of vibration.

Intended to meet this need, and as plaintiff impresses upon us, at a time when the nation at war had urgent need for it, is the patent in issue. It is a hermetically sealed housing for the piezoelectric crystal to prevent the intrusion of atmosphere into its interior, is sturdy and compact, and still permits a current to flow through the housed device without interference. It uses a Kovar header and pins sealed by a matching glass seal in which the pins also serve as mechanical support for the crystal holder and for the crystal mounting element.

As set forth in the broadly stated claims 6 and 14 of his patent,[1] the only claims here in issue, the plaintiff used a stamped metallic base with one or two openings; sealed a metal pin in each opening by a glass seal, the pin establishing the external electrical connection, and also internally, establishing the electrical connection with the mounting of the piezo-electric element; and a metal cover or cap for the crystal and base, sealed to the base with solder for making the housing moisture-proof. It is essential that the base, pins and glass seal have substantially equal thermal coefficients of expansion, thus enabling the application of moderate heat for the soldering of the cap to the base without breaking the seal and thus impairing the insulation of the pins from the base.

The District Court has given a more elaborate description of the patent,

---

1. Claims 6 and 14 read as follows:

"6. A moisture-proof housing for a piezo-electric element comprising a metallic cap and a base, said base including a stamped, metallic frame, said frame forming the external member of said base, the upper portion of said frame having two bottom openings, two pins for establishing electrical connections of said element, a glass seal filling the bottom portion of said frame, and holding said pins in concentric relationship with respect to said openings, the inner ends of said pins protruding through said glass seal into said housing for establishing said electrical connections with the mountings of said piezo-electric element, said frame, pins, and glass seal having substantially equal thermal coefficients of expansion, and a solder seal between said cap and said frame for making said housing moisture-proof."

"14. A moisture-proof housing for a piezo-electric element comprising a cap and a base, said base including external means for receiving said cap, said base having at least one opening therein, and at least one terminal member for establishing an electrical connection of said element, an insulation seal filling said opening and holding said terminal member within said opening, one end of said terminal member protruding through said insulation seal into said housing for establishing electrical connection with a mounting of said element, said base, terminal member, and insulation seal having substantially the same thermal coefficient of expansion, and sealing means between said cap and said base for making said housing moisture-proof."

and has detailed the patents cited as prior art. We have carefully reviewed the District Court's decision and the arguments of the parties on appeal. It is our conclusion that the District Court did not err in its determination of invalidity of the claims in controversy.

The plaintiff disavows any claim as the first to invent a hermetic seal for a piezo-electric crystal. He does say that he is the first to invent an effective small hermetic seal in which a piezo-electric crystal could be assembled without destruction of the crystal utility through heat application in the sealing of the cap to the base. However, not only was hermetic sealing old, but according to plaintiff's expert, the use of a special metal, Kovar, with a pin and a matching glass seal having a substantially equal thermal coefficient, such as Borosilicate glasses, was well-known and available to anybody working in the art.

While the plaintiff relies heavily on the presumption of validity by reason of the issuance of the patent, he insists that the vacuum tube art, including metal tubes, which was ignored by the Patent Office, is irrelevant. But we agree with the District Court that there is no justification for such conclusion. Dole Refrigerating Co. v. Amerio Contact Plate Freezers, 3 Cir., 1959, 265 F.2d 627, 629; Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 1945, 152 F.2d 895. We also agree that the elements of plaintiff's combination, as stated in claims 6 and 14, are old, and that taken as a whole they do not display more than the works of a mechanic skilled in the art. Stanley Works v. Rockwell Mfg. Co., 3 Cir., 1953, 203 F.2d 846, certiorari denied 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 345; Fisch v. Gould, 3 Cir., 1957, 246 F.2d 5, certiorari denied 355 U.S. 914, 78 S.Ct. 341, 2 L.Ed.2d 273. We do not mean that the plaintiff has not produced a useful article, and we have carefully sought to avoid confusing simplicity with hindsight. But it is not enough that the claimed discovery is useful, or even that it is an improvement. It must show an inventive advance, and must differ from elements previously known in such a way that the subject would not have been obvious to one skilled in the art. Given the particular problem and the need for its solution, a skilled mechanic could draw upon his knowledge of the art to create the housing here involved, or one substantially like it, without the exercise of inventive faculty. This is what the District Court said the plaintiff did, and we cannot say that its result was plainly wrong.

For the reasons stated, the judgment of the District Court will be affirmed.