JIFFY ENTERPRISES, INC., Appellant,

v.

SEARS, ROEBUCK & CO., and E. H. Tate Co.

E. H. TATE CO.

v.

JIFFY ENTERPRISES, INC., Appellant. Nos. 13804 and 13805.

United States Court of Appeals
Third Circuit.

Argued March 22, 1962.

Decided July 9, 1962.

Arthur H. Seidel, Philadelphia, Pa. (Marvin Comisky, Philadelphia, Pa., of counsel, on the brief), for Jiffy Enterprises.

Cedric W. Porter, Boston, Mass. (Henry N. Paul, Jr., Robert B. Frailey and Paul & Paul, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The first of these two patent cases (consolidated for trial) is a suit by Tate to declare Jiffy's Margulis patent 2,809,-001 invalid. The second is by Jiffy for infringement of the patent. The trial court, finding the patent invalid, granted a declaratory judgment to Tate and dismissed the Jiffy complaint. Jiffy appeals both judgments.[1]

Our concern is with the validity of the product patent involved. It consists of a nail-less adhesive picture hanger capable of being secured to a wall without penetrating its surface.

In 1953 Tate sued Jiffy to invalidate the original patent 2,647,711.[2] Two years later that action was settled by an agreement which gave Tate a royalty-free, non-exclusive license to manufacture the '711 hangers. The trial court properly found as a fact under the evidence that "Tate has made a hanger embodying the alleged invention of the Margulis ('001) patent in suit. Tate has

---

1. In No. 13,805 Tate, as plaintiff, moved for summary judgment. This was prior to the consolidation of the two civil actions. The sole ground urged by Tate on this motion was that it was entitled to make the '001 hangers on the basis of the license agreement concerning the '711 hangers. The motion was denied, the court finding that the '001 hanger "does not fit within the language of" the claims made in the '711 patent, because the '711 "claims indicate that the hook is attached to the bar by a separate device, a rivet. The 001 patent provides that the hook and the attachment to the bar comprise one unit, or, as described in the patent, an 'integral tubular flange.' This suffices to distinguish what Tate is now manufacturing from what is claimed in the 711 patent." Jiffy deems this to be "[t]he law of the case in the court below * * * the picture hanger of the patent in suit is not within the closest prior art, namely patent 2,647,711 * * *." However, the court specifically stated in its opinion on the motion that it was not considering "at this stage of the litigation" Tate's claim that the '001 patent is invalid since this claim "was not pressed upon the argument for summary judgment * * *." The court confined itself to Tate's claim of license, a claim which has been subsequently abandoned.

2. As described in the patent the '711 hanger is:

"* * * comprised of a strip of material 11, such as cloth, coated on one side (rear face) with a water activated adhesive. The cloth strip is folded under on itself along a transverse line of fold 12 disposed intermediate its ends to form a pair of flaps 13 and 14, and an intermediate hem as illustratively defined by said fold-line and a transverse line of stitching 15 spaced upwardly therefrom. A steel support bar 16 is secured in said hem between the adhesive surfaces of said flaps, and a metallic hook 19 is pivotally secured upon said support bar intermediate its ends.

\* \* \* \* \*

"A small circular opening 17 (Figure 4) is provided through the bar 16 intermediate the ends thereof. * * *

"A hanger hook 19 (Figure 5), which may be metallic, has a shank portion 20 with an opening 21 extending through the upper end thereof and a hook portion 22 secured to the lower end. The shank 20 is positioned snugly adjacent said fold 12 (Figure 6) with its opening 21 coaxial with the opening 17 in the metal bar 16, and with the hook portion 22 on the opposite side from the bar 16.

"The metal hook 19 is secured in position by means of a hollow metal rivet 23

242

been engaged in prior litigation in 1955 against the first Margulis patent '711, and *in December 1955 when the prior litigation was settled by the grant of a free non-exclusive license under Margulis '711 Tate was making the particular Hanger now charged to infringe the Margulis patent in suit,* which was merely a pending application at that time. As soon as Tate learned the Margulis patent in suit had been granted and that its current hanger was charged to infringe, Tate immediately brought the present Declaratory Judgment suit. Pending the outcome of this litigation, Tate has not been making the hanger of the Margulis patent in suit since shortly after bringing this suit." The sole physical difference between the hangers is the arrangement for the hook. This is described in the '001 patent as follows:

"A hook 19 * * * is pivotally secured upon support bar 17, by having a perpendicular integral tubular flange 20 inserted through hook-receiving opening 18 of support bar 17 and mating openings 26 and 27 on the juxtaposed faces of the hem. The rear end of flange 20 which projects somewhat beyond the rear opening 27 of the hem is flared, swaged or peened so as to retain hook 19 on hanger 10. This is readily accomplished, as tubular flange 20 is of relatively thin cross-section compared with the shank portion 21 and bight or bill portion 22 of hook 19. Hook 19 is secured in position by the flared outwardly turned rear portion of tubular flange 20 and the rear face of shank portion 21 adjacent the flange. The outside diameter of tubular flange 20 is smaller than the diameter of hook-receiving opening 18 and the flared portion of flange 20 does not engage strip 11 so tightly as to prevent pivotation of hook 19."

which extends through the hook opening 21, the opening 17 in the bar 16, and appropriate openings in the strip 11. The size of the opening 21 in the shank 20 and the inside and outside diameters of

It is undisputed that the '711 patent is the closest prior art to the patent in question. Viewing the hangers side by side, the basic difference between the two which is readily perceptible to the eye is that the hook on the '711 hanger *swivels around the head of a separate eyelet* which is inserted through a hole in the metal support bar while the hook on the '001 hanger *is part of an integral flanged eyelet* which is also inserted through a hole in the bar. As a result of substituting a single moving element for a moving element and a stationary element, which together obviously serve the same function as the single moving element, Jiffy alleges the following structural differences and advantages to have accrued in the '001 hanger: (1) it is thinner, making it "easier to interlock an eye of one picture hanger with the bill of the hook of another picture hanger"; (2) it is lighter, "thereby reducing shipping costs"; (3) it is more efficient because "there are no metal to metal rubbing surfaces * * *" causing the hook to stick in one position. Thus, "the hook is easier to rotate * * *." The rotary mounting better facilitates the use of two or more hangers acting in concert to enable greater weights to be hung thereon; (4) it is "easier to manufacture * * * since fewer steps are needed" and there are none of the "jamming and alignment problems associated with the manufacture" of the '711 hanger; (5) it can be manufactured much more rapidly because the integral hook arrangement facilitates an increase of automation in the manufacturing process; and (6) it is therefore "cheaper to manufacture * * *."

■■ As stated the '001 patent is for a product. From the facts, it is apparent that if the '001 hanger is to be considered patentable apart from the patented '711 hanger, there must be embodied within it certain structural fea-

the rivet 23 are arranged so that the hanger hook is free to pivot to different positions as indicated by the broken line position of the hook in Figure 1."

tures which distinguish it from the '711 hanger and which meet the test of invention, to wit: Whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C., 1952 ed., Section 103. See R. M. Palmer Company v. Luden's, Inc., 236 F.2d 496, 500 (3 Cir., 1956). The only distinguishing features between the two hangers are the substitution of the hook and separate eyelet by a hook with an integral flanged eyelet, a decrease in weight and thickness, and an increase in hook mobility. Aside from the hook arrangement, the district court found "upon examination of the two hangers" that "any difference in weight, mobility of the hook, or thickness of the hanger is, at best, negligible." 196 F.Supp. at 291. This finding of fact by the district court cannot be disturbed unless clearly erroneous. R. M. Palmer, supra, 236 F.2d at 498. Our own examination of the two hangers reveals that beyond any reasonable doubt, these differences are not readily perceptible to the senses. The district court also found with justification that the advantages claimed from these differences "are not, in fact, there." 196 F.Supp. at 291.

■ Regarding the change in hook arrangement, the district court said, "The substitution of functional equivalents, albeit one piece for two, does not constitute an advance in the art. For this reason alone '001 does not embody any new concept which might achieve the dignity of invention." Ibid. It cited in support Welsh Manufacturing Co. v. Sunware Products Co., 236 F.2d 225 (2 Cir., 1956), and 1 Walker on Patents 196 (Deller ed., 1937) the latter citing numerous authority. Jiffy contends that reliance on these authorities "was improper" because they "refer to a situation wherein separate parts are *rigidly* secured together and the alleged invention was the making of the entire unit in one integral piece. In the case at bar, the invention resides in making integral parts which formerly were *rotatably* movably secured together." Jiffy asserts that "this distinction is extremely important and the court below failed to grasp its significance." Actually the substitution of one integral rotatable part for one fixed part and one rotatable part calls for nothing more than the exercise of routine mechanical skill. It is in principle the same as the substitution of one integral fixed part for two separate fixed parts under the general rule.

■ Jiffy next contends that the trial judge erred in relying upon patents outside the art to which picture hangers pertain in concluding that the use of an integral hook arrangement was anticipated. This was an alternative holding by the court in connection with its conclusion of lack of invention. See 35 U.S.C., 1952 ed., Section 102(e). Those patents deal with shoe lacing-hooks, glove fasteners, envelope fasteners, and the like, having in common the employment of an integral hook arrangement similar or identical to the one in question. The court held that the use of the arrangement in the '001 patent "was an obvious expedient" in view of the "common practice in industry to make hooks with integral flanged eyelets for many purposes." Id., 196 F.Supp. at 295. It also found that there was no showing by Jiffy that "there was a demand in the industry for such a combination. When Margulis perceived there could be an advantage in assembling the parts to make the hook and eyelet in one piece, and hence a reduction in cost of manufacture, he had only to order the part from the Edwin B. Stimpson Co., who were readily equipped to supply it, * * * who were already supplying the hook and eyelet in two separate pieces" and who had "made many kinds of small metal pieces, including hooks with integral eyelets for many years for many purposes. * * * [T]he part was made promptly available to Jiffy by the Stimpson Company." Id. at 297. We find no error here. Zephyr American Corp. v. Bates Mfg. Co., 128 F.2d 380, 383 (3 Cir., 1942); Welsh Man-

ufacturing Co. v. Sunware Products Co., supra, 236 F.2d at 226.

■■ There is nothing about the '001 hanger which suggests any reasonable advance in the character or utility of the product apart from that embodied in the '711 hanger. They are basically the same product with the exception that the '001 hanger is modified to permit a more simple and faster manufacturing process. This is not sufficient to confer patentability upon a product. Pfanstiehl Chemical Co. v. American Platinum Works, 135 F.2d 171 (3 Cir., 1943). The same reasoning applies to the commercial success of the '001 hanger. Commercial success is not sufficient to confer patentability upon a product not otherwise patentable. Stanley Works v. Rockwell Mfg. Co., 203 F.2d 846, 848 (3 Cir., 1953), cert. den. 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 345 (1953). Though of no vital importance, it is noteworthy that there is no evidence that the commercial success was caused by any advance in the '001 hanger as compared to the earlier one

■ Lastly, Jiffy contends that this appeal is governed by R. M. Palmer Company v. Luden's, Inc., supra. In that suit, however, the invention was not obvious to those skilled in the art. The patents were for designs of chocolate animals which "disclose artistic treatment in form and configuration, creating a pleasing impression and substantially different aesthetic effect * * *" and which "reflect originality born of inventive faculty." Id. 236 F.2d at 501. These designs "awakened the [stagnant and lagging] industry to a new satisfaction of a long felt need." Id. at 498. The facts in Luden's are nowise comparable to those before us. Dollac Corporation v. Margon Corporation, 275 F.2d 202 (3 Cir., 1960), is more in point. The patent was for a new, more realistic doll eye combination. Although it had "been customary to provide radial serrations for the express purpose of simulating natural iris lines," defendant claimed "discovery of a reflection of incident light in con-

trast with an adjacent non-reflective pupil portion." Id. at 204. However, the serrated surface was no different than that described in prior art "except the function ascribed to it." Ibid. We there concluded that:

"To assemble the teachings of others and yet produce a device validly patentable, there must intervene * * * more ingenuity than that of a mechanic skilled in the art. It is settled teaching of the patent law that the aggregation of old elements which, in the aggregation, perform or produce no new or different function than that performed or produced by them theretofore, is not patentable invention. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008." Ibid.

■ The use of the integral hook arrangement in the case at bar falls well within the import of these words. It neither required unusual skill nor produced unusual results; it was apparent to an ordinary person skilled in the art when the occasion demanded.

The judgments of the district court will be affirmed.

KALODNER, Circuit Judge (dissenting).

The majority's disposition is based on two grounds: (1) the "differences [between the '711 and '001 patents] are not readily perceptible to the senses"; and (2) the changes between '711 and '001 were *obvious;* consequently the '001 patent is invalid.

On the score of the first ground, the late Judge Goodrich, sitting specially in the District Court in an earlier phase of this litigation, denied Tate's motion for summary judgment on the specific ground that the hangers made under '001 "differed" from those made under '711, contrary to the majority's view and contrary to the finding of the Court below that "any differences [in the hangers] is at best negligible."

I agree with Judge Goodrich's view that the hangers are different.

As to the majority's second point of *obviousness:*

While the changes in the structure of the hangers made under '001 may be obvious *after* they were made, that does not mean that they were obvious *before* they were made.

As was said in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721 (1944):

> "Viewed after the event, the means Anthony adopted seem simple and such as should have been obvious to those who worked in the field, but this is not enough to negative invention."

To the same effect see Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 434, 435, 31 S.Ct. 444, 55 L.Ed. 527 (1911).

> In my opinion the changes made in '001 "were non-obvious at the time they were made; that they were the result of inventive faculty." R. M. Palmer Company v. Luden's, Inc., 236 F.2d 496, 498 (3 Cir., 1956).

The record here discloses ample basis for holding '001 valid because of the "economy of production" which it made possible, with resulting decrease in cost to the ultimate consumer in the course of its tremendous commercial success.

On the score of the foregoing the District Court made the factual findings (Finding of Fact No. 20):

> " * * * it is now possible to mechanize the manufacture of the picture hanger of the patent in suit by the use of automation thereby increasing the speed of production and decreasing the cost of manufacture of same. Under the old method, eighty picture hangers were manufactured per minute with four girls working on the production line. As a result of the new method, the presently used machines produce more than two hundred picture hangers per minute with part-time attendance by one girl."

As the late Judge Learned Hand said in Reiner v. I. Leon Co., 285 F.2d 501, 504 (2 Cir. 1960), cert. den. 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388:

> " * * * economy of production is as valid a basis for invention as foresight in the disclosure of new means. In the case at bar the saving of material as compared to anything that had preceded, was very great indeed * * *."

To the same effect, see Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670, 675 (4 Cir. 1961); Norman v. Lawrence, 285 F.2d 505 (2 Cir. 1960).

For the reasons stated I would reverse the judgments of the District Court.